NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0430-12T1

EDUARDO CORTEZ,

     Plaintiff-Appellant,

v.

JOSEPH G. GINDHART, ESQUIRE
d/b/a JOSEPH G. GINDHART
& ASSOCIATES and JOSEPH G.
GINDHART & ASSOCIATES,

     Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| May 21, 2014 |
| APPELLATE DIVISION |

_____

Submitted October 8, 2013 — Decided May 21, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2096-12.

Weisberg Law, P.C., attorneys for appellant (Matthew B. Weisberg, on the brief).

Goldberg Segalla, LLP, attorneys for respondents (Matthew S. Marrone and Gregory D. Hanscom, on the brief).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Plaintiff Eduardo Cortez filed a complaint against his former counsel, defendants Joseph G. Gindhart and his law firm (Gindhart), alleging legal malpractice, breach of contract, and

breach of fiduciary duty.  He now appeals from an order that granted summary judgment, dismissing his complaint.  We affirm.

I

Cortez was the owner and operator of People's Multiple Services, a tax preparation business in Atlantic City.  In 2004, after the Internal Revenue Service (IRS) commenced an investigation regarding the preparation of fraudulent tax returns, Cortez retained Gindhart to represent him.  Gindhart represented Cortez until shortly after Cortez was indicted in April 2008.

In his complaint, Cortez alleges that Gindhart recommended he retain an accountant, Ronald R. Petlev, and assured Cortez that all communications Cortez had with Petlev would be privileged.  Cortez retained Petlev, who then assisted in the audit and prepared his tax returns for 2003, 2004, and 2005. The complaint alleges that, shortly after Petlev was retained, the IRS matter was referred to the Criminal Investigations Division.  Cortez alleges further that he asked Gindhart to represent two employees of his company who were potential targets of the IRS investigation and that, although Gindhart initially declined on the ground he might have a conflict of interest, he later agreed to do so.

The complaint alleges that Cortez "repeatedly made requests to Gindhart to negotiate a plea agreement with the United States Attorneys office."  It is further alleged that Gindhart "refused to negotiate a plea agreement."  However, a letter dated November 28, 2006, addressed to Gindhart from the trial attorney for the United States Department of Justice states it is in response to Gindhart's November 27, 2006 letter "regarding the investigation of your client, Eduardo Cortez, and a possible pre-trial resolution of this matter."  The letter continues:

> As you may be aware, Internal Revenue Service has authorized prosecution of Mr. Cortez for various criminal violations of the Internal Revenue Code, including evasion of income taxes for the years 1993 to 1995 (26 U.S.C. § 7201), two counts of making and subscribing a false document for the false Offers in Compromise filed by Mr. Cortez (26 U.S.C. § 7206(1)), and 43 counts of aiding and assisting in the preparation or presentation of false returns (26 U.S.C. § 7206(2)).

> The tax loss as currently calculated, and subject to change, is in excess of $460,000.  Adding other relevant conduct, Mr. Cortez's failure to pay approximately $160,000 additional tax due and owing for 2001 and 2002, the total tax loss approaches $600,000.  This amount may increase as the government gathers new information.

> Should your client be convicted, a court may impose a sentence of up to the maximum penalty permitted by statute. Specifically, a violation of 26 U.S.C. § 7201, tax evasion, carries a maximum penalty of five years incarceration and a

A-0430-12T1

fine of $250,000. In addition, each violation of 26 U.S.C. § 7206(1), making and subscribing a false document, carries a maximum penalty of three years incarceration and a fine of $250,000. Finally, each violation of 26 U.S.C. § 7206(2), aiding and abetting the preparation or presentation of a false return, carries a maximum penalty of three years incarceration and a fine of $250,000. If your client is convicted of all the authorized charges, he faces a maximum period of incarceration of 140 years and a maximum fine of $11,500,000.

According to the United States Sentencing Guidelines, sections 2T1.1, 2T1.4, and 2T4.1, the base offense level for your client's conduct is 20. Moreover, a sentencing court likely would find that your client was in the business of preparing or assisting in the preparation of tax returns, increasing the offense level by 2 points. Thus, without taking into account any other enhancements of your client's criminal history, should a jury convict your client of some or all of the charged offenses, he could be sentenced within a guideline range of 41-51 months imprisonment and a fine of $7,500 to $75,000.

Should Mr. Cortez choose to clearly accept responsibility for the offenses, there is a possibility of a reduction of the offense level by two points. Further, a timely notification of your client's intent to plead guilty could lead to a further one-point reduction of the offense level.

The discussion set forth above does not constitute a binding offer for a plea agreement. Please call me to discuss this matter further.

4

A-0430-12T1

The complaint alleges that in February 2008, Petlev was subpoenaed to testify before a federal grand jury and that Gindhart fought, unsuccessfully, to quash the subpoena on the ground that Petlev's communications with Cortez were privileged. According to the complaint, Petlev was ordered to testify and disclosed incriminating documents and information regarding Cortez.

In April 2008, the federal grand jury returned a sixteen-count indictment against Cortez and Rosalind Kengkart, who was employed as a tax return preparer by People's Multiple Services. Cortez and Kengkart were charged with aiding and assisting in the filing of false and fraudulent income tax returns for specific taxpayers for the tax years 2001, 2002, and 2003. A superseding indictment was returned later in April 2008, alleging a conspiracy count against Cortez and Kengkart, additional false and fraudulent returns for tax years 2002 and 2003, and tax evasion. The complaint alleges that Gindhart withdrew from representing Cortez after the federal prosecutor advised that the Government intended to file a motion for his disqualification.

Cortez retained new counsel, who negotiated a plea agreement. In August 2008, Cortez pled guilty to two counts of the superseding indictment that charged him with conspiracy to

defraud the United States, 18 U.S.C.A. § 371, and attempted tax evasion, 26 U.S.C.A. § 7201. According to the plea agreement, each of these charges carried a maximum prison sentence of five years and a maximum fine of the greatest of (1) $250,000; (2) twice the gross amount of the pecuniary gain derived from the offense; or (3) twice the gross amount of any pecuniary loss suffered by a victim. The parties agreed to disagree on the method of calculation of the total offense level under the United States Sentencing Guidelines established under the Sentencing Reform Act, 18 U.S.C.A. §§ 3551-3742. Under the Government's analysis, the total Guideline offense level applicable to Cortez was 23, which would result in a recommended[1] range of forty-six to fifty-seven months imprisonment.[2] Gindhart's analysis resulted in a total offense level of 21, which calls for a recommended range of thirty-seven to forty-six months imprisonment. The parties also agreed that the restitution Cortez owed to the United States was not less than $598,674.50. Defendant retained a limited right to appeal the sentence.

---

[1] Pursuant to United States v. Booker, 543 U.S. 220, 227, 245-46, 125 S. Ct. 738, 746, 756-57, 160 L. Ed. 2d 621, 639, 651 (2005), the sentencing guidelines are not mandatory.

[2] U.S. Sentencing Guidelines Manual ch.5, pt.A (2009), http://www.ussc.gov/guidelines-manual/2009/2009-5asentab.

A-0430-12T1

In February 2009, Cortez was sentenced to concurrent terms of thirty-six months on the two counts, ordered to pay both $442,734 in restitution and a special assessment of $100 and placed on supervised release for a term of three years after he was released from imprisonment. The court waived the fine authorized by statute.

In May 2012, Cortez filed the instant complaint. Gindhart filed a motion to dismiss the complaint in July 2012, arguing dismissal was warranted because exoneration is a necessary prerequisite to any claim arising from a criminal defense attorney's representation of a client. In opposing the motion, Cortez stated he did "not dispute his guilt nor conviction but rather his sentence." Therefore, he contended his guilt or innocence was not relevant to his claims against Gindhart, which included improper billing, breach of fiduciary duty, and breach of contract arising from a lack of good faith and fair dealing.

The trial court viewed the allegations in the complaint as "essentially a legal malpractice claim." Citing McKnight v. Office of the Pub. Defender, 197 N.J. 180 (2008), the court stated that "for . . . a criminal defendant who's entered a guilty plea to argue that his lawyer committed malpractice, there would have to have been either a vacation of the plea or

an exoneration." The court granted summary judgment, dismissing the complaint in its entirety.[3]

In this appeal, Cortez argues that his complaint did state a claim for legal malpractice and that the trial court erred in failing to substantively adjudicate his remaining causes of action.

II

The standard applicable to a summary judgment motion in the trial court and on appeal is "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue[s] in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995); see also R. 4:46-2.

Although we disagree with the trial court's reasoning that a vacation of Cortez's guilty plea or an exoneration were necessary pre-requisites to the legal malpractice action here, we review judgments, not opinions, and affirm for the reasons that follow. See Velazquez v. Jiminez, 336 N.J. Super. 10, 43 (App. Div. 2000) ("[A] correct result predicated upon an

_____

[3] Although filed as a motion to dismiss the complaint, the motion was properly considered under the standard applicable to a summary judgment motion because matters beyond the pleadings were considered. R. 4:6-2(e).

incorrect basis does not preclude an affirmance of that ruling."), aff'd, 172 N.J. 240 (2002).

In order to survive summary judgment, Cortez had to show that the claims he asserted were viable. As to the legal malpractice claim, he was required to show that competent, credible evidence existed to support each of the elements of that negligence action, i.e., "1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) that the attorney breached the duty owed; 3) that the breach was the proximate cause of any damages sustained; and 4) that actual damages were incurred." Sommers v. McKinney, 287 N.J. Super. 1, 9-10 (App. Div. 1996) (citing Albright v. Burns, 206 N.J. Super. 625, 632 (App. Div. 1986)).

The record shows the existence of an attorney-client relationship from 2004 until Gindhart ceased representing Cortez in 2008. During the course of that relationship, Gindhart had a duty to exercise a reasonable degree of care in representing Cortez. Cortez alleges that Gindhart breached this duty to him by failing to negotiate a plea agreement despite his repeated requests. However, Cortez has failed to make a prima facie showing that Gindhart breached a duty to him or that he suffered any damage proximately caused by the breach alleged.

As a preliminary matter, we address the question whether it was necessary for Cortez to show some evidence of exoneration before he could proceed with this action. In our view, the conclusion that exoneration was required on the facts of this case rested upon a misinterpretation of McKnight, supra, and Rogers v. Cape May Cnty. Office of the Pub. Defender, 208 N.J. 414 (2011).

In McKnight, a former client of the Public Defender alleged he was wrongfully convicted because his attorney negligently failed to advise him of the deportation consequences of his guilty plea. Rogers, supra, 208 N.J. at 422. He asserted this deficiency by his attorney in a motion to withdraw his guilty plea and in a successful petition for post-conviction relief. Id. at 423. Because the claim was subject to the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:12-3, he was required to file a notice of claim within the ninety-day time frame set forth in the TCA. Ibid.

In light of the fact that McKnight succeeded on his petition for post-conviction relief, there was no issue as to whether he suffered an injury in the form of a wrongful conviction. The issue to be decided was when his claim accrued

to trigger that relatively brief timeframe.[4] "[A] legal-malpractice action accrues when an attorney's breach of professional duty <u>proximately causes a plaintiff's damages</u> . . . . At that point, the plaintiff has a right to sue and the statute of limitations begins to run." <u>Grunwald v. Bronkesh</u>, 131 <u>N.J.</u> 483, 492 (1993) (emphasis added) (citations omitted); <u>see also</u> <u>Vastano v. Algeier</u>, 178 <u>N.J.</u> 230, 236 (2003); <u>Burd v. N.J. Tel. Co.</u>, 76 <u>N.J.</u> 284, 291-92 (1978).

In both <u>McKnight</u> and <u>Rogers</u>, the plaintiffs claimed they were wrongfully convicted as a result of their public defenders' negligence. For the accrual of a malpractice based on such an allegation, there is no injury unless and until the conviction is shown to be invalid, with some degree of finality. <u>See</u> <u>Rogers</u>, <u>supra</u>, 208 <u>N.J.</u> at 424 ("Our ruling in <u>McKnight</u> was rooted in notions of finality . . ."); <u>McKnight v. Office of the Pub. Defender</u>, 397 <u>N.J. Super.</u> 265, 297 (App. Div. 2007) ("[S]ome exoneration should be required, and . . . proof of innocence, or at least some exoneration, is required before recovery can be obtained against a public defender[.]") (Stern, J., dissenting), <u>rev'd</u>, <u>McKnight</u>, <u>supra</u>, 197 <u>N.J.</u> at 180.

---

[4] Ordinarily, the limitations period for a legal malpractice action is six years. <u>N.J.S.A.</u> 2A:14-1; <u>McGrogan v. Till</u>, 167 <u>N.J.</u> 414, 417 (2001).

Here, there is no issue regarding the timeliness of the complaint or the validity of the conviction. Cortez candidly admits he is guilty of the offenses to which he pled guilty. The injury he claims is that, as a result of Gindhart's alleged negligence, he was deprived of an opportunity to accept a more favorable plea offer and, as a result of that deprivation, he received a harsher sentence.

It is difficult "to define the duty and responsibilities of defense counsel in the plea bargain process," as "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Missouri v. Frye, ___ U.S. ___, ___, 132 S. Ct. 1399, 1407, 182 L. Ed. 2d 379, 390 (2012). However, the central role that plea bargains play in the criminal justice system requires a standard of representation in that process that satisfies the Sixth Amendment. See Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376; 182 L. Ed. 2d 398 (2012); Frye, supra, ___ U.S. at ___, 132 S. Ct. at 1407, 182 L. Ed. 2d at 389; State v. Gaitan, 209 N.J. 339, 350-51 (2012); State v. Norman, 405 N.J. Super. 149, 162 (App. Div. 2009).

Considering the scope of an attorney's duty within the context of a legal malpractice action, we note that a lawyer "is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct . . . ." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 486-487 (App. Div.) (quoting McCullough v. Sullivan, 102 N.J.L. 381, 384 (E. & A. 1926)), certif. denied, 137 N.J. 311 (1994). Like the standard applicable to petitions for post-conviction relief, the attorney's duty is "to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise." St. Pius X House of Retreats v. Diocese of Camden, 88 N.J. 571, 588 (1982); see State v. Nash, 212 N.J. 518, 543 (2013) ("The test is not whether defense counsel could have done better, but whether he met the constitutional threshold for effectiveness."). Moreover, the duty to exercise reasonable care will vary, depending upon the circumstances of the specific case, Ziegelheim v. Apollo, 128 N.J. 250, 260 (1992), and must be considered "with reference to the type of service the attorney undertakes to perform." St. Pius X House of Retreats, supra, 88 N.J. at 588.

Ethical standards provide guidance as to the level of care applicable to the representation of defendants in the plea

13                                                          A-0430-12T1

negotiation process.[5]   An attorney must "abide by a client's decisions concerning the objectives of representation."  State v. Fortin, 178 N.J. 540, 610 (2004) (quoting Model Rules of Prof'l Conduct R. 1.2(a) (2003)).  In State v. Barlow, 419 N.J. Super. 527 (App. Div. 2011), we noted that "R.P.C. 1.2(a) requires, in a criminal case, that defense counsel 'shall consult with the client and, following consultation, shall abide by the client's decision on the plea to be entered, jury trial and whether the client will testify.'"  Id. at 535.  We held that the defendant "was deprived of his constitutional right to counsel when his attorney declined to pursue a motion on his behalf to withdraw his guilty plea."  Ibid.  In Frye, the Court deemed it unnecessary to define the parameters of defense counsel's obligation, holding, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Frye, supra, ___ U.S. at ___, 132 S. Ct. at 1408, 182 L. Ed. 2d at 390; see also Ziegelheim, supra, 128 N.J. at 260-61 ("The lawyer must take 'any steps necessary

_____

[5] "While violations of ethical standards do not per se give rise to tortious claims, the standards set the minimum level of competency which must be displayed by all attorneys. . . . Where an attorney fails to meet the minimum standard of competence governing the profession, such failure can be considered evidence of malpractice."  Albright, supra, 206 N.J. Super. at 634 (citations omitted).

in the proper handling of the case,'" which includes "a careful investigation of the facts of the matter, the formulation of a legal strategy, the filing of appropriate papers, and the maintenance of communication with the client.") (quoting Passanante v. Yormark, 138 N.J. Super. 233, 239 (App. Div. 1975), certif. denied, 70 N.J. 144 (1976)).

A defense counsel's duty to provide representation in the plea negotiation process thus plainly includes the duty to explore the possibility of resolving criminal charges through a plea agreement when directed to do so by a client, to keep the client informed of a plea offer, and to follow the client's instructions in accepting or rejecting the plea offer. See Vastano, supra, 178 N.J. at 234-35 (client in civil matter alleged, inter alia, that attorney was negligent in failing to disclose settlement offer); State v. Pych, 213 N.J. Super. 446, 459 (App. Div. 1986) (noting attorney's duty to inform a client "promptly of any information important to him"), certif. denied, 107 N.J. 90 (1987); see also Ziegelheim, supra, 128 N.J. at 261.

In Alampi v. Russo, 345 N.J. Super. 360, 371 (App. Div. 2001), the plaintiff former client pled guilty to a criminal offense committed before he was represented by counsel. Although we found it appropriate to require a plaintiff who seeks to recover damages for an alleged invalid conviction to

first prove he was unlawfully convicted, id. at 367, we expressly stated,

> We need not and do not reach the question of the requirement for exoneration from a criminal conviction in all cases before a plaintiff in this type of case can make out a jury issue. A more propitious fact pattern for a plaintiff perhaps may emerge in a future case; thus, for now, we eschew a "bright line" rule requiring exoneration in all cases.
>
> [Id. at 371.][6]

An attorney's negligence in the discharge of duties for a client who pleads guilty may result in actual injury to a client even if guilty. For example, if an attorney fails to communicate a plea offer prior to a plea cut-off date, the client who proceeds to trial and receives a sentence harsher than the offer has suffered an injury, i.e., a result measurably worse than the sentence that would have been imposed in the absence of attorney negligence.[7] State v. Powell, 294 N.J.

---

[6] See also State v. Gonzalez, 142 N.J. 618, 629 (1995) ("[T]he doctrine of issue preclusion does not prevent the pleading party in the trial of a tort or contract claim from contesting the admitted facts."); Winstock v. Galasso, 430 N.J. Super. 391, 396 (App. Div. 2013); Marrero v. Feintuch, 418 N.J. Super. 48, 59 (App. Div. 2011) ("[A] plaintiff need not prove actual innocence of criminal charges as a prerequisite to pursue legal malpractice claims against his former criminal defense counsel.")

[7] See also Frye, ___ U.S. at ___, 132 S. Ct. at 1408, 182 L. Ed. 2d at 390 (failure to communicate plea offers that may have been
(continued)

Super. 557, 564 (App. Div. 1996). Under such circumstances, the client's malpractice claim does not depend upon the invalidity of the conviction or the repudiation of a knowing and voluntary guilty plea. We do not view McKnight or Rogers as barring such a claim for lack of some exoneration.

Similarly, Cortez's allegation against Gindhart does not depend upon the invalidity of the conviction or his admission of guilt. His allegation that Gindhart failed to engage in any plea negotiations despite his requests could form the basis for a legal malpractice claim without evidence of exoneration if he was able to prove that he suffered an actual injury that was proximately caused by the alleged negligence.

B

"Actual damages . . . are real and substantial as opposed to speculative." Grunwald, supra, 131 N.J. at 495. "An attorney is only responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice," that is, the negligent conduct is "a substantial contributing factor in causing the loss." 2175 Lemoine Ave. Corp., supra, 272 N.J. Super. at 487. Therefore, the client bears the burden of

---

(continued)
favorable to the accused constituted ineffective assistance of counsel); Lafler, supra, ___ U.S. at ___, 132 S. Ct. at 1384, 182 L. Ed. 2d at 406 (defendant's rejection of plea offer caused by ineffective assistance of counsel).

showing, by a preponderance of the competent, credible evidence, "what injuries were suffered as a proximate consequence of the attorney's breach of duty." <u>Id.</u> at 488. The burden is not satisfied by mere "conjecture, surmise or suspicion." <u>Ibid.</u> (quoting <u>Long v. Landy</u>, 35 <u>N.J.</u> 44, 54 (1961)) (internal quotation marks omitted). Ordinarily, the measure of damages is what result the client would have obtained in the absence of attorney negligence. <u>2175 Lemoine Ave. Corp.</u>, <u>supra</u>, 272 <u>N.J. Super.</u> at 488; <u>see also</u> <u>Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.</u>, 179 <u>N.J.</u> 343, 358 (2004); <u>Froom v. Perel</u>, 377 <u>N.J. Super.</u> 298, 315 (App. Div.), <u>certif. denied</u>, 185 <u>N.J.</u> 267 (2005). Thus, to prove such injury, "the client must demonstrate that he or she would have prevailed, or would have won materially more . . . but for the alleged substandard performance." <u>Lerner v. Laufer</u>, 359 <u>N.J. Super.</u> 201, 221 (App. Div.), <u>certif. denied</u>, 177 <u>N.J.</u> 223 (2003); <u>cf.</u> <u>State v. Allegro</u>, 193 <u>N.J.</u> 352, 371-72 (2008) (in reviewing the denial of a petition for post-conviction relief, in which the second prong of the <u>Strickland</u>[8]/<u>Fritz</u>[9] test required proof that, absent counsel's failure, the outcome of defendant's case would have

---

[8]   <u>Strickland v. Washington</u>, 466 <u>U.S.</u> 668, 687, 694, 104 <u>S. Ct.</u> 2052, 2064, 2068, 80 <u>L. Ed.</u> 2d 674, 693, 698 (1984).

[9]   <u>State v. Fritz</u>, 105 <u>N.J.</u> 42, 60-61 (1987).

been different, the Court remanded for a hearing as to whether trial counsel was ineffective during plea discussions and negotiations).

Like the plaintiff in a civil case whose attorney fails to file an action before it is barred by the statute of limitations, the damages Cortez claims are based on what he asserts was a missed opportunity. Therefore, to have a viable legal malpractice claim, he was required to demonstrate that the missed opportunity had actual value. It was necessary for him to show that the Government was willing to extend a plea offer to him at the time Gindhart represented him that was more favorable than the one he accepted and that his sentence would have been less than the one he received. He has failed to do so.

To defeat a motion for summary judgment, the opponent must "'come forward with evidence' that creates a genuine issue of material fact." Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div.) (quoting Brill, supra, 142 N.J. at 529), certif. denied, 211 N.J. 608 (2012); see R. 4:46-2(c). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require

submission of the issue to the trier of fact." <u>Ibid.</u> (emphasis added).

Although we must view the "evidential materials . . . in the light most favorable to the non-moving party" in reviewing summary judgment motions, <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 540, we emphasize that it is <u>evidence</u> that must be relied upon to establish a genuine issue of fact. "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" <u>Hoffman v. Asseenontv.Com, Inc.</u>, 404 <u>N.J. Super.</u> 415, 425-26 (App. Div. 2009) (citation omitted).

Here, Cortez has provided no evidence that the Government was willing to enter into a more favorable plea agreement before Gindhart ceased representing him or that he would have received a more lenient sentence if he had entered a guilty plea earlier.[10] Rather, Cortez relies only upon the allegations in his complaint, without providing any evidentiary support for those allegations.

It is, however, "well settled that '[b]are conclusions in the pleadings without factual support in tendered affidavits,

---

[10] We also note that, relevant to the need to establish that a duty was breached here, Cortez produced no evidence that he asked Gindhart to negotiate a guilty plea for him and that Gindhart refused to do so.

will not defeat a meritorious application for summary judgment.'" Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999) (quoting U.S. Pipe & Foundry Co. v. Am. Arbitration Ass'n, 67 N.J. Super. 384, 399-400 (App. Div. 1961)); see also Puder v. Buechel, 183 N.J. 428, 440-41 (2005) ("[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion"); Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011); Oakley v. Wianecki, 345 N.J. Super. 194, 201 (App. Div. 2001) ("unsubstantiated inferences and feelings" are insufficient to defeat a motion for summary judgment).

Indeed, to the extent that a record has been provided, it supports the conclusion that Cortez's argument lacks any merit. The Government's November 2006 letter to Gindhart stated that, according to the United States Sentencing Guidelines, the base offense level for Cortez's conduct was 20; and that it was likely the offense level would be increased by two points based upon a finding that Cortez "was in the business of preparing or assisting in the preparation of tax returns." The Government predicted a guideline range of 41-51 months imprisonment. The Government also advised it was possible the offense level could be reduced by two points if Cortez accepted responsibility for

the offenses and reduced by an additional point by a "timely notification" of an intent to plead guilty.

Pursuant to this letter, which was clearly identified as not constituting "a binding offer for a plea agreement," the most favorable offense level available to Cortez in 2006 was 19. According to the Sentencing Table in effect at the time, this offense level called for a recommended range of 30 to 37 months imprisonment. U.S. Sentencing Guidelines Manual ch.5, pt.A (2009), http://www.ussc.gov/guidelines-manual/2009/2009-5asentab. Cortez has presented no evidence to demonstrate that a more favorable plea offer was available to him at any time while he was represented by Gindhart. And, in fact, his sentence of thirty-six months incarceration was well within the range the Government stated could apply if Cortez accepted responsibility and gave a "timely notification of [his] intent to plead guilty" in 2006. Thus, Cortez's legal malpractice claim rests upon an allegation of injury that is based upon mere speculation, and was correctly dismissed. See Alampi, supra, 345 N.J. Super. at 365.

## III

Cortez also argues that the trial court erred in failing to "substantively adjudicate" his remaining claims of breach of contract and breach of fiduciary duty. These arguments lack

sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), beyond the following brief comments.

Cortez alleged that Gindhart breached the contract by failing to provide competent and effective legal services and breaching the covenant of good faith and fair dealing. Among the factual allegations in the complaint, Cortez alleged, "Gindhart improperly billed Plaintiff for legal services incurred for defending himself in the government's motion to disqualify despite the fact that his miscalculations, mistakes and poor legal advice gave rise to the motion." The malpractice count similarly alleged that Gindhart had breached a duty to Cortez by over-billing him.

Even if we were to accept Cortez's characterization of these allegations as not being subsumed in the legal malpractice claim, he nevertheless had the obligation to submit competent opposition to the motion pursuant to Rule 4:46-2 to demonstrate that a genuine issue of fact existed as to his claims. As we have discussed, he could not rely upon the conclusory assertions in his pleadings to show he had a viable claim.

Although the complaint alleges that he paid $189,000 in legal fees, Cortez presented no evidence as to what he was billed, let alone what was "improperly" billed or any evidence to corroborate his allegation that there was any impropriety in

billing him for any service. He submitted no evidence showing it was improper for Gindhart to bill for opposing a motion in Cortez's criminal prosecution or even a certification that he did not authorize Gindhart to oppose the motion. He thus failed to show through competent evidence that his claim of improper billing was viable.

Cortez also contends his breach of fiduciary duty should survive summary judgment because this claim has different elements than the claim of legal malpractice. However, in alleging this cause of action, the only fiduciary relationship identified is that of attorney and client and the breach of fiduciary duty is only identified as "the aforementioned conduct." He has failed to distinguish the breach of fiduciary duty claim from his legal malpractice claim in either his opposition to the motion in the trial court or on appeal.

In sum, because his opposition to the summary judgment motion failed to provide evidence to support either the breach of contract or breach of fiduciary claims, they were properly dismissed.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0430-12T1