NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0645-15T1

LAWRENCE V. LONGHI,

 Plaintiff-Appellant,

v.

STARR, GERN, DAVISON & RUBIN, PC,
and ALLAN R. MORDKOFF, ESQ.,

 Defendants-Respondents,

and

WILLIAM B. JONES, II, ESQ.,
SIMIO & JONES, LLP, RICHARD
SULES, ESQ., and STOCKSCHLAEDER
MCDONALD & SULES, PC,

 Defendants.

 Argued October 24, 2017 - Decided November 14, 2017

 Before Judges Carroll and Leone.

 On appeal from the Superior Court of New
 Jersey, Law Division, Essex County, Docket No.
 L-5506-13.

 Anthony Scordo, III argued the cause for
 appellant (Law Offices of Stueben & Scordo,
 attorneys; Mr. Scordo, on the brief).
 Lisa Besson Geraghty argued the cause for
 respondent Starr, Gern, Davison & Rubin, PC,
 (Starr, Gern, Davison & Rubin, PC, attorneys;
 Ms. Geraghty, on the brief).

PER CURIAM

 Plaintiff Lawrence V. Longhi appeals from summary judgment

orders dismissing his legal malpractice action against defendants

Starr, Gern, Davison, & Rubin, P.C. (Starr Gern or the Firm),

Ronald Davison, Esq., Richard Welch, Esq., and Allan R. Mordkoff,

Esq. For the reasons that follow, we affirm.

 I.

 Plaintiff's claim of legal malpractice arises out of a failed

business relationship. Because this motion was decided under Rule

4:46, we recite the facts as presented by plaintiff, the non-

moving party. Robinson v. Vivorito, 217 N.J. 199, 203 (2014) ("We

derive the facts viewed in the light most favorable to plaintiff

from the record submitted in support of and in opposition to

defendants' motion for summary judgment.").

 In March 2003, plaintiff, acting on behalf of his closely-

held companies Afgamco, Inc. and Longhi Associates, Inc., entered

into a Memorandum of Understanding (the Agreement) with the Michael

Baker Corporation and Weidlinger Associates, Inc. (collectively

referred to as the Baker Defendants) to jointly undertake

infrastructure development projects in Afghanistan and share in

 2 A-0645-15T1
the profits. The Agreement specifically provided "a Joint Venture

(JV) will be established to prosecute the work . . . . [Plaintiff]

will be paid a commission based on the magnitude of the work

secured." According to plaintiff, following the United States

military intervention in Iraq, the Baker Defendants agreed to

expand the scope of the Agreement to Iraq as well.

 Plaintiff's relationship with the Baker Defendants

deteriorated when he learned they accepted contracts from the U.S.

Army Corps of Engineers to build army bases in Iraq for the Afghani

army, a project valued at over two billion dollars. Plaintiff

never received notice of these government contracts from the Baker

Defendants.

 The Underlying Litigation

 Plaintiff maintained that the Baker Defendants procured

contracts with the assistance of plaintiff and his companies but

failed to advise plaintiff and his companies of the execution of

the contracts or compensate them in accordance with the Agreement.

Consequently, plaintiff retained Starr Gern as legal counsel to

pursue a breach of contract action. The retainer agreement

provided for compensation to Starr Gern on a contingent fee basis,

and allowed the Firm to withdraw as counsel under certain

conditions, including if Starr Gern determined that plaintiff's

 3 A-0645-15T1
case would not recover a judgment sufficient to warrant pursuing

the litigation.

 Starr Gern filed a complaint on behalf of plaintiff and his

companies against the Baker Defendants in September 2005 (the

underlying litigation). The complaint alleged, in pertinent part,

breach of contract and fraud.

 On April 30, 2007, Starr Gern provided plaintiff with a

detailed memorandum containing "an overview of th[e] case as it

[] stands from a factual, legal and procedural standpoint." The

memorandum detailed available theories of recovery and concluded

that

 even if [Starr Gern is] successful in gaining
 access to all the information we seek . . . .
 [t]his would require a significant investment
 of our own, [] but if we were to successfully
 develop the evidence [], the returns could be
 substantial, both in terms of likelihood of
 success and of eventual damages.

 Four days later, on May 3, 2007, Starr Gern sent a letter

notifying plaintiff the Firm was withdrawing as counsel, and that

"in our meeting today it was agreed that you will engage new

counsel to pursue this case." The letter also advised plaintiff

his new counsel should "contact [Starr Gern] to make arrangements

for the transition of professional responsibility[.]"

 That same day, the Baker Defendants' counsel sent a letter

to Starr Gern enclosing two contracts previously entered into

 4 A-0645-15T1
between the Baker Defendants and the U.S. Army Corps of Engineers

Transatlantic Program Center. According to plaintiff, Starr Gern

failed to divulge this information to plaintiff or his successor

counsel.

 In June 2007, Starr Gern filed a motion to be relieved as

plaintiff's counsel on the basis that "irreconcilable differences"

had developed in their relationship. Plaintiff responded by letter

to the court, indicating his "dissatisfaction with the timing and

justification for the withdrawal[,]" but also noting "that if

[Starr Gern] do[es] not wish to represent me any longer, then I

do not want them as my attorneys."

 At this time, plaintiff had a pending discovery motion to

compel the Baker Defendants to release contracts pertinent to the

underlying suit, and a motion to extend discovery. After Starr

Gern withdrew, the court stayed the case for forty-five days so

plaintiff could retain new counsel. The court also sua sponte

withdrew both discovery motions and allowed them to be refiled

after the stay was lifted and new counsel retained.

 Plaintiff retained new counsel in October 2007, but that firm

subsequently withdrew in February 2008. Thereafter, plaintiff

retained defendant Mordkoff, who had previously worked on the case

at Starr Gern before leaving the Firm. According to plaintiff,

neither Starr Gern, successor counsel, nor Mordkoff, ever re-filed

 5 A-0645-15T1
the motion to compel the Baker Defendants to release the contracts

awarded to them in Afghanistan and Iraq.

 At the close of discovery, the Baker Defendants moved for

summary judgment. The court granted the motion, determining that

 federal [procurement] policy [ ] prohibits the
 use or employment of any person who is
 compensated on a contingency fee basis by
 government contractors to secure contracts
 with the federal government. . . . [E]ven if
 any Army Corps of Engineers contracts were
 obtained through plaintiff's efforts, federal
 [procurement] law bars plaintiff's claim for
 a finder's fee.

 . . . .

 Congress has provided two exceptions to this
 rule, bona fide employees and bona fide
 established commercial or selling entities.
 Plaintiff does not suggest that his efforts
 fall within either exception.

 [(Emphasis added).]

The trial court dismissed the underlying action with prejudice on

July 18, 2008. Plaintiff did not appeal.

 The Malpractice Action

 Plaintiff commenced the present legal malpractice action on

January 13, 2013, alleging Starr Gern failed to disclose material

information to him obtained in discovery, including the contracts

enclosed with the May 3, 2007 letter from the Baker Defendants'

counsel, and represented to the court and plaintiff that his

lawsuit was meritless.

 6 A-0645-15T1
 During the malpractice litigation, plaintiff produced an

expert report authored by Michael P. Ambrosio,1 who opined:

 the facts in the instant case clearly manifest
 the existence of the required elements to
 establish [d]efendant[s'] liability for legal
 malpractice.

 . . . .

 [Defendants] failed to properly advise
 [p]laintiff regarding his claims and failed
 to turn over to [p]laintiff or successor
 counsel material evidence of the existence of
 contracts that [the Baker Defendants] had
 obtained and . . . had agreed to pay
 [p]laintiff's company one third of the profits
 on those contracts.

 Defendant Lawyers were negligent in their
 failure to properly respond to the alleged
 applicability of . . . 48 C.F.R. 3.400-
 3.4[06].2

 At the conclusion of discovery, Starr Gern and its individual

representatives, Davison and Welch, moved for summary judgment.

The motion judge conducted oral argument and framed plaintiff's

malpractice action as

 based on an allegation that Starr[] Gern [ ]
 failed to appraise [plaintiff] of [ ]

1
 In his December 29, 2014 report, Ambrosio identified himself as
"an expert on the legal profession, legal ethics and legal
malpractice." Among his qualifications, Ambrosio served as a
Professor of Law at Seton Hall Law School for forty-four years,
during which he taught a course in Professional Responsibility for
thirty-six years.
2
 These regulations provide the exceptions to the bar of the
federal procurement statute.

 7 A-0645-15T1
 correspondence evidencing contracts procured
 by the Baker [D]efendants . . . to which
 [plaintiff] allege[s] an entitlement to a
 finder's fee commission . . . [thereby]
 precluding [p]laintiff from procuring []
 discovery.

 . . . .

 Plaintiff [further] contends that Starr Gern
 never advised [him] of any related federal
 statutes [pertinent to his case,] and never
 advised him on the subject. . . . Plaintiff
 alleges that by withdrawing when they did,
 Starr[] Gern knew that plaintiff and new
 [c]ounsel would never get fully and properly
 prepared in time for trial . . . and failed
 to turn over key documents necessary to
 successfully litigate the case[.]

 On January 23, 2015, the court granted summary judgment in

favor of Starr Gern, Davison, and Welch. The motion judge found:

 [t]he underlying case was dismissed because
 the contracts presented to the [c]ourt were
 between the Baker [D]efendants and the U.S.
 Army Corp[s] of Engineers. Finder's fees in
 connection with those contracts are
 specifically prohibited by the federal
 procurement statute[.] . . . So the [c]ourt
 found that plaintiff could not prevail as a
 matter of law and granted summary judgment for
 the Baker [D]efendants.

 . . . .

 [I]n granting summary judgment, the [c]ourt
 observed that plaintiff was unable to proffer
 any evidence of any contract that was awarded
 to the Baker [D]efendants as a result of
 plaintiff's effort, despite almost 900 days
 of discovery. In addition, it is clear that
 the [c]ourt considered the exceptions to the
 federal procurement bar to a finder's fee.

 8 A-0645-15T1
 [(Emphasis added).]

 Mordkoff thereafter moved for summary judgment, arguing

plaintiff was collaterally estopped from seeking damages based on

the court's ruling in the underlying action that the federal

procurement law barred his breach of contract action against the

Baker Defendants. The motion judge agreed, finding "this is a

case where collateral estopp[el] does apply." On August 7, 2015,

the judge entered an order dismissing the malpractice action

against Mordkoff. Plaintiff now appeals the summary judgment

orders.3

 II.

 When reviewing the grant of summary judgment, we analyze the

decision applying the "same standard as the motion judge." Globe

Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v.

Bhagat, 217 N.J. 22, 38 (2014)).

 That standard mandates that summary judgment
 be granted "if the pleadings, depositions,
 answers to interrogatories and admissions on
 file, together with the affidavits, if any,
 show that there is no genuine issue as to any
 material fact challenged and that the moving

3
 Plaintiff's notice of appeal also references a companion order
entered on August 7, 2015, denying plaintiff's motion to extend
discovery, which the court concluded was rendered moot by the
entry of summary judgment. However, plaintiff has not briefed
that issue. An issue not briefed is deemed waived. See Gormley
v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

 9 A-0645-15T1
 party is entitled to a judgment or order as a
 matter of law."

 [Templo Fuente De Vida Corp. v. Nat'l Union
 Fire Ins. Co., 224 N.J. 189, 199 (2016)
 (quoting R. 4:46-2(c)).]

 "To defeat a motion for summary judgment, the opponent must

'come forward with evidence' that creates a genuine issue of

material fact." Cortez v. Gindhart, 435 N.J. Super. 589, 605

(App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J.

v. State, 425 N.J. Super. 1, 32 (App. Div.), certif. denied, 211

N.J. 608 (2012)), certif. denied, 220 N.J. 269 (2015).

"[C]onclusory and self-serving assertions by one of the parties

are insufficient to overcome the motion[.]" Puder v. Buechel, 183

N.J. 428, 440-41 (2005) (citations omitted).

 In a legal malpractice action, "summary disposition is

appropriate only when there is no genuine dispute of material

fact." Ziegelheim v. Apollo, 128 N.J. 250, 261 (1992). "When no

issue of fact exists, and only a question of law remains, [we]

afford[] no special deference to the legal determinations of the

trial court." Templo Fuente De Vida, supra, 224 N.J. at 199

(citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140

N.J. 366, 378 (1995)).

 A legal malpractice action has three essential elements: "(1)

the existence of an attorney-client relationship creating a duty

 10 A-0645-15T1
of care by the defendant attorney, (2) the breach of that duty by

the defendant, and (3) proximate causation of the damages claimed

by the plaintiff." Jerista v. Murray, 185 N.J. 175, 190-91 (2005)

(quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)).

 The first element requires an attorney "to exercise on his

client's behalf the knowledge, skill and ability ordinarily

possessed and exercised by members of the legal profession

similarly situated and to employ reasonable care and prudence in

connection therewith." Lamb v. Barbour, 188 N.J. Super. 6, 12

(App. Div. 1982), certif. denied, 93 N.J. 297 (1983). At a

minimum, an attorney must take "any steps necessary" to properly

handle a case, including carefully investigating the facts,

formulating a legal strategy, filing appropriate papers, and

communicating with the client. Ziegelheim, supra, 128 N.J. at

260-61. The second element requires a breach of these duties. As

to the third element, plaintiff must prove he suffered damages as

a proximate consequence of defendants' breach of duty. Garcia v.

Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 357 (2004).

 In the present case, there is no dispute that defendants owed

plaintiff a duty of care. We thus focus our analysis on whether

plaintiff adduced sufficient competent, credible evidence that

defendants breached that duty and, if so, whether such breach was

the proximate cause of plaintiff's damages.

 11 A-0645-15T1
 Plaintiff contends Starr Gern breached its duty of care by

(1) failing to disclose material information obtained during

discovery; (2) failing to raise the federal procurement

regulations in prosecuting the underlying matter; and (3)

misrepresenting to both plaintiff and the lower court that the

underlying lawsuit was meritless.

 As to Starr Gern's "fail[ure] to disclose material discovery

information[,]" plaintiff points to the two contracts Starr Gern

received from the Baker Defendants' counsel in his May 3, 2007

letter. He argues Starr Gern never advised him or successor

counsel it received those contracts, thus resulting in a breach

of the Firm's duty of care. Plaintiff supports his argument with

the May 3, 2007 letter that shows Starr Gern received the two

contracts in discovery. In moving for summary judgment in the

malpractice action, Starr Gern's counsel submitted a certification

disputing the alleged non-disclosure. Thus, whether Starr Gern

disclosed these contracts to plaintiff or successor counsel in the

underlying action is a materially disputed fact.

 As to Starr Gern's failure to inform plaintiff of federal

procurement law and accompanying exceptions, it is well-

established that "[i]gnorance of the law does not diminish [an

attorney's] responsibility." In re Rosner, 113 N.J. 2, 16 (1988);

see also Procanik by Procanik v. Cillo, 226 N.J. Super. 132, 150

 12 A-0645-15T1
(App. Div.) ("If the law is settled, [an attorney] is expected to

know what it is and state it accurately."), certif. denied, 113

N.J. 357 (1988).

 Here, Starr Gern compiled an eight-page memorandum providing

plaintiff with "an overview of this case as it currently stands

from [a] factual, legal and procedural standpoint." This analysis

completely fails to address federal procurement policy or its

exceptions. A reasonable juror could certainly conclude this

omission was rooted in negligence and Starr Gern failed to properly

advise plaintiff with respect to the merits of the underlying

action.

 Assuming Starr Gern was negligent in withholding the contract

documents and failing to advise plaintiff on federal procurement

law, we next address whether such negligence was the proximate

cause of plaintiff's harm. For plaintiff to establish he was

damaged by defendants' negligence, plaintiff must have proffered

sufficient evidence that otherwise he would have prevailed and

obtained damages in the underlying litigation. He thus must have

proffered sufficient evidence that his companies fell within an

exception to the bar of the federal procurement policy.

 "To establish the requisite causal connection between a

defendant's negligence and plaintiff's harm, plaintiff must

present evidence to support a finding that defendant's negligent

 13 A-0645-15T1
conduct was a 'substantial factor' in bringing about plaintiff's

injury, even though there may be other concurrent causes of the

harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div.)

(quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 419 (1996)),

certif. denied, 185 N.J. 267 (2005).

 The simplest understanding of [proximate
 cause] in attorney malpractice cases arises
 from the case-within-a-case concept. For
 example, if a lawyer misses a statute of
 limitations and a complaint is dismissed for
 that reason, a plaintiff must still establish
 that had the action been timely filed it would
 have resulted in a favorable recovery.

 [Conklin, supra, 145 N.J. at 417.]

 In granting summary judgment in the underlying action, the

court found plaintiff failed to proffer evidence of any contract

awarded to the Baker Defendants as a direct result of plaintiff's

efforts that would entitle plaintiff to a commission. Arguably,

however, a jury could find plaintiff's inability to produce the

two contracts at issue resulted from Starr Gern's negligence in

failing to disclose them. Moreover, in opposing Starr Gern's

summary judgment motion in the malpractice action, plaintiff

detailed the efforts of his companies that led to the procurement

of the two contracts enclosed with the May 3, 2007 letter that

were valued at over two billion dollars. Again, if accepted by a

jury, this evidence could have supported a finding that Starr

 14 A-0645-15T1
Gern's negligence led to the dismissal of the underlying action

and plaintiff was damaged as a result.

 Nonetheless, we conclude that plaintiff's malpractice claims

against all defendants fail because he did not adduce competent

evidence that the underlying action against the Baker Defendants

was not barred under federal procurement policy. To establish

legal malpractice, plaintiff was "required to show that competent,

credible evidence existed to support each of the elements of that

negligence action[.]" Cortez, supra, 435 N.J. Super. at 598.

 In granting summary judgment in the underlying action, the

court concluded that federal procurement policy barred plaintiff's

recovery. The court noted bona fide employees and bona fide

established commercial or selling entities constituted exceptions

to this policy, and "[p]laintiff does not suggest that his efforts

fall within either exception."

 Federal procurement policy, 41 U.S.C.A. § 3901,4 requires that

 [e]very contract awarded after using
 procedures other than sealed-bid procedures
 shall contain a suitable warranty . . . by the
 contractor that no person or selling agency
 has been employed or retained to solicit or
 secure the contract on an agreement or
 understanding for a commission, percentage,
 brokerage, or contingent fee, except for bona
 fide employees or bona fide established
 commercial or selling agencies the contractor
 maintains to secure business.

4
 The same policy exists under 10 U.S.C.A. § 2306.

 15 A-0645-15T1
 [(Emphasis added).]

 48 C.F.R. § 3.400 through 48 C.F.R. § 3.406 "provide[]

policies and procedures that restrict contingent fee arrangements

for soliciting or obtaining Government contracts to those

permitted by 10 U.S.C.[A.] § 2306(b) and 49 U.S.C.[A.] § 3901."

48 C.F.R. § 3.400 (2017). Section 3.402(b) contains the exception

which, plaintiff argues, would have allowed him to survive summary

judgment in the underlying action had counsel properly researched

and presented it. The exception permits "contingent fee

arrangements between contractors and bona fide employees or bona

fide agencies." 48 C.F.R. § 3.402(b) (2017).

 A bona fide agency is "an established commercial or selling

agency, maintained by a contractor for the purpose of securing

business, that neither exerts nor proposes to exert improper

influence to solicit or obtain Government contracts nor holds

itself out as being able to obtain any Government contract or

contracts through improper influence." 48 C.F.R. § 3.401 (2017).

Five factors are relevant in making this determination:

 (1) whether the fees are commensurate with the
 nature and extent of the services rendered by
 the company and not excessive as compared with
 the fees customarily allowed for similar
 services; (2) whether the company had adequate
 knowledge of the products and business of the
 party it contracted with; (3) whether there
 has been continuity in the relationship
 between the parties; (4) whether the company

 16 A-0645-15T1
 is an established concern; and (5) whether the
 arrangement is not confined to obtaining
 government contracts.

 [Puma Indus. Consulting, Inc. v. Daal Assocs.,
 Inc., 808 F.2d 982, 985 (2d Cir. 1987).]

Improper influence is defined as "any influence that induces or

tends to induce a Government employee or officer to give

consideration or to act regarding a Government contract on any

basis other than the merits of the matter." Ibid.

 Plaintiff argues that his closely-held companies, Afgamco,

Inc. and Longhi Associates, Inc., fall within the exceptions to

the bar of the federal procurement statute. However, plaintiff's

certification in opposition to defendants' summary judgment

motions in the malpractice action is silent on this issue and does

not address any of the factors that would qualify him or his

companies as bona fide employees or agencies. Plaintiff's expert,

Ambrosio, did not submit a certification addressed to this point,

and in his report he merely referenced "Exhibit A" to plaintiff's

certification as "documentation" that "clearly demonstrates how

[plaintiff's] company was a bona fide agency." "Exhibit A," in

turn, is a copy of the March 17, 2003 Agreement that merely spells

out the commission arrangement between plaintiff and the Baker

Defendants and likewise does not address the factors that would

demonstrate a regulatory exception.

 17 A-0645-15T1
 In short, plaintiff failed to provide any competent factual

support for his contention that he fell within an exception to the

bar of the federal procurement policy. Consequently, he did not

establish he was entitled to damages from the Baker Defendants in

the underlying action, or that any legal malpractice by defendants

in that action was the proximate cause of any loss.

 Affirmed.

 18 A-0645-15T1