**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4287-16T4

PATRICIA WARD,

    Plaintiff-Appellant,

v.

BRIGIDA OCHOA, NOE GONZALEZ,
LAND SAFE APPRAISALS, INC. and
BANK OF AMERICA,

    Defendants,

and

CENTURY 21 WORDEN & GREEN
and KEN SONG,

    Defendants-Respondents.

_____

Argued May 21, 2018 – Decided June 28, 2018

Before Judges Ostrer, Rose and Firko.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
10761-14.

Justin Lee Klein argued the cause for
appellant (Hobbie, Corrigan & Bertucio, PC,
attorneys; Justin Lee Klein, of counsel and
on the briefs).

Deirdre M. Dennis argued the cause for respondents (Law Offices of Linda S. Baumann, attorney; Deirdre M. Dennis, on the brief).

PER CURIAM

Plaintiff Patricia Ward ("Ward") appeals the Law Division order granting summary judgment in favor of defendants Century 21 Worden & Green ("Century 21") and Ken Song ("Song") and dismissing the complaint against them with prejudice. We affirm.

Ward's claim arises out of severe and permanent injuries she sustained after being attacked by a pitbull while performing an appraisal on October 3, 2014, at the home owned by defendants Brigida Ochoa ("Ochoa") and Noe Gonzalez ("Gonzalez"). Ochoa and Gonzalez previously settled their claim with Ward.

I.

We discern the following facts from the motion record, considering them in the light most favorable to Ward. See Robinson v. Vivirito, 217 N.J. 199, 203 (2014) (citation omitted). On June 5, 2014, Song entered into a listing agreement with the homeowners with a view toward conducting a short sale of their foreclosed residential property. Song, a realtor employed by Century 21, was the listing agent and the buyer's agent. In order to close title, the short sale had to be approved by the foreclosing mortgage holder, Bank of America ("BOA"). During the period of the listing agreement, Ward contends Song was obligated to ascertain the number

and breed of dogs the homeowners owned. Ward, a licensed real estate appraiser since 1989, was assigned to inspect and appraise the subject property through the auspices of BOA's appraisal coordinator, Land Safe Appraisal Services, Inc. ("Land Safe").

Ward was contacted directly by Land Safe to perform the appraisal. In her career, she had performed 200 to 250 residential appraisals annually. Ward attempted to communicate with Ochoa to set up the appointment because the homeowner was listed as the contact person for the appraisal. After Ward's efforts were unsuccessful, she asked Land Safe for permission to contact Song in order to facilitate making the appointment with Ochoa. Ward called Song to follow up. At her deposition, she stated that no inquiry was made as to whether the home was owner occupied or if dogs were on the premises.

Ultimately, Ward contacted Ochoa to set up the appointment. At her deposition, Ward understood Ochoa was her client. Ward did not ask Ochoa if there was a lockbox on the house or if there were dogs present. Song was never contacted by Ward to ascertain whether or not the home was owner occupied. However, he did inform her that there was a dog at the premises prior to the date of the appraisal. The homeowners contended that their pitbulls did not have any vicious propensities prior to this incident.

When Ward arrived at the home on October 3, 2014, Ochoa told her that two dogs were crated in the kitchen. Ward confirmed this and felt that the crated dogs posed no danger to her. After stepping into the foyer, a bedroom was situated to the left. An older, lethargic, uncrated pitbull was in that bedroom described by Ward as "very calm and docile." Ward did not object to the presence of any of the dogs or request their removal. The crated dogs were fifteen to sixteen feet away from the foyer. The interior inspection proceeded for about forty minutes without incident. She proceeded with the appraisal and did not reschedule even though she had the ability to do so. At her deposition, Ward admitted that she had no reason to believe the pitbulls were dangerous because two were in crates and not making noise, and the other dog was sick.

After Ward and Ochoa exited the home through the front door, they walked along the perimeter of the house near the side door and Ochoa went inside. She noticed that the dogs were out of their crates and on the deck and making noise. Ward observed this as well and nonetheless, proceeded to photograph the rear of the house. At this point, she testified that she still had no reason to believe that any of the dogs would bite her. As Ward walked toward her car, one of the pitbulls charged her and she ran away in fear. At the foot of the driveway, Ward was repeatedly attacked

A-4287-16T4

by one of the pitbulls, which resulted in her sustaining a fractured radius and nerve damage, requiring surgery. Admittedly, Ward did nothing to ensure her own safety. Song was not at the premises when the incident occurred, and no one requested him to be there.

Century 21 crafted an internal "policy" to ensure that "pets" were appropriately secured by homeowners when third parties were to visit. Song and Century 21 contend that they abided by their internal policy, referred to as the "Open House Don't" list, as evidenced by the fact that the dogs were restrained and crated at the time Ward arrived.

The "Open House <u>Don't</u>" list provided as follows:

1. USE OWNERS' PHONES TO MAKE ANY LONG DISTANCE CALLS. IF YOU DO LEAVE $$.
2. LET OWNER BE THERE WHEN [YOU ARE] HOME.
3. FORGET PAPERWORK TO WORK ON IF IT IS SLOW.
4. ONLY PUT UP 1 OR 2 SIGNS.
5. FORGET TO CLEAN UP DONUTS/COFFEE.
6. LEAVE HOUSE TO SHOW ANOTHER HOME IN AREA.
7. BE LATE OR CLOSE EARLY.
8. LET CUSTOMER LEAVE WITHOUT NAME/NUMBER/YOUR BUSINESS CARD
9. DO OPEN ON POORLY TRAVELED ROAD, SECLUDED  AREA.
10. HOLD OPEN ON POPULAR SPORTING DATE/HOLIDAY WEEKENDS.
11. HOLD OPEN ON O.P.T.
12. <u>ALLOW OWNER TO LEAVE PETS AROUND</u>.
13. LET SMALL CHILDREN OF VISITORS GET OUT OF CONTROL.

[(Emphasis added).]

It is undisputed that Ward never had a written agreement with Century 21 (or Song). On the date in question, Ward was a partner with P & R Appraisals, LLC ("P & R"). Her company did not have any policies or protocols applicable to appraising a residence when dogs were present.

Century 21 and Song moved for summary judgment arguing that their alleged acts or omissions were not a proximate cause of damage to Ward, and that they did not owe any duty to her.

In an oral opinion rendered on May 26, 2017, the judge determined that Ward could not maintain a negligence claim because no duty of care existed between these parties. In doing so, the judge found:

> [t]he most that could be said is to tell the parties to keep your dogs caged or take them out of the house. They have dog[s] in ca[g]es. The dog gets loose. It's not foreseeable in any way. They complied with everything reasonable that the realtor could have told them. There's nothing in any way that would be foreseeable by [Century 21 and Song], which is an element of negligence on premises liability.

A memorializing order was entered on the same date, and this appeal followed.

Ward argues on appeal that the judge should have denied the motion for summary judgment because she established that Century

6

21 and Song owed her a duty to remove the pitbulls, breached that duty, and caused her injuries. In making this argument, Ward essentially presents two theories of negligence. First, she argues that movants' duty is derived from "multiple sources," including common law, because being attacked by the pitbull was an apparent and foreseeable risk. Second, Ward contends Century 21 and Song had an affirmative obligation to ensure the safety of the premises by having the pitbulls removed when she was present because movants had an internal "policy" to this effect which they failed to abide with. Additionally, she contends that the judge disregarded legal authorities, evidence, and her expert report. We disagree.

## II.

This court reviews a ruling on summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017); and Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Thus, this court considers, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente, 224 N.J. at 199 (quoting R. 4:46-2(c)).

As our Supreme Court has instructed:

> a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill, 142 N.J. at 540.]

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted).

If there is no genuine issue of material fact, this court must then "'decide whether the trial court correctly interpreted

the law.'" <u>DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman</u>, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). "When no issue of fact exists, and only a question of law remains, this Court affords no special deference to the legal determinations of the trial court." <u>Templo Fuente</u>, 224 N.J. at 199 (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)). However, a "'trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" <u>Ibid.</u> (quoting <u>Manalapan Realty</u>, 140 N.J. at 378).

### III.

Ward's initial argument on appeal raises a purely legal issue because "[t]he determination of the existence of a duty is a question of law for the court." <u>Petrillo v. Bachenberg</u>, 139 N.J. 472, 479 (1995) (citation omitted). Our courts "have long held that it is ordinarily a plaintiff's burden to prove negligence, and that it is never presumed." <u>Khan v. Singh</u>, 200 N.J. 82, 91 (2009) (citation omitted). "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015) (quoting <u>Polzo v. Cnty. of Essex</u>, 196 N.J. 569, 584 (2008)).

There is a presumption against negligence, and the burden of establishing such negligence is on plaintiff. Buckelew v. Grossbard, 87 N.J. 512, 525 (1981). "A prerequisite to recovery on a negligence theory is a duty owed by defendant to plaintiff." Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988) (citation omitted). "The duty owed by a premises owner . . . depends in general upon the application of well-established categories through which the status of the injured party is used to define both duty and foreseeability." Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 316 (2013).

In Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993), plaintiff was injured after losing her footing on a step during an open-house tour at the invitation of the broker. The Court held "the nature of the relationship between a [real estate] broker and its customer in the conduct of an open-house inspection of property is substantial." Id. at 441. "[W]e conclude that implicit in the broker's invitation to customers is some commensurate degree of responsibility for their safety while visiting the premises." Ibid. "[T]he key to the broker-customer relationship, which gives rise to a duty of care, is the services that are offered by the broker and expected by the customer in the context of an open-house inspection of property." Id. at 444. (Emphasis added).

We find that Hopkins is factually distinguishable. The Court's holding in Hopkins is grounded in the recognition that it is reasonable for a broker to inspect a home for purposes of marketing it to potential buyers . . . and to give adequate warnings with respect to hazards readily discoverable through such an inspection . . . . " Id. at 446. We decline to extend the holding in Hopkins to interpret that a dog constitutes a "hazardous condition," as urged by Ward. Century 21 and Song did not have an economic interest in Ward conducting an appraisal here. Governed by these principles, we find that Ward did not engage in any activity akin to any sort of a relationship with Century 21 or Song, thus making Hopkins inapplicable here.

Unlike the plaintiff in Hopkins who was injured after missing a step, Ward was injured as a result of her employment with P & R. The record is devoid of any evidence to suggest that Ward was a "customer" of Century 21 or Song. Consequently, there was no legal relationship between the parties, and no privity of contract.

Whether analyzed under the traditional common law categories, or under Hopkin's more general analysis, Ward failed to establish a duty. Thus, the judge properly granted summary judgment after analyzing "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care . . . ." Id. at 449.

Plaintiff's remaining evidentiary arguments lack sufficient merit to warrant further discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION