31 A.3d 934

JOHN ROGERS, PLAINTIFF–APPELLANT, v. CAPE MAY
COUNTY OFFICE OF THE PUBLIC DEFENDER AND
ERICA SMITH, DEFENDANTS–RESPONDENTS.

Argued September 27, 2011—Decided December 5, 2011.

416

*Frank L. Corrado* argued the cause for appellant (*Barry, Corrado, Grassi & Gibson,* attorneys; *Mr. Corrado, Joseph C. Grassi* and *James E. Moore* on the briefs).

*Karen L. Jordan,* Chief, Deputy Attorney General, argued the cause for respondents (*Paula T. Dow,* Attorney General of New Jersey, attorney; *Lewis A. Scheindlin* and *Melissa H. Raksa,* Assistant Attorneys General, of counsel, *Rahat N. Babar,* Deputy Attorney General, on the briefs).

Justice LONG delivered the opinion of the Court.

On this appeal we are asked to revisit the term "exoneration" as used in our decision in *McKnight v. Office of the Public Defender,* 197 *N.J.* 180, 962 *A.*2d 482 (2008), to determine the timeliness of a legal malpractice action based on representation in a criminal matter. In 1999, defendant was convicted of various drug offenses. In October 2007, on appeal from the denial of post-conviction relief (PCR), his conviction was reversed by the Appellate Division based on ineffective assistance of counsel. The case was remanded for trial. In July 2008, the indictment was dismissed with prejudice. In November 2008, defendant filed a notice of tort claim against his trial lawyers for negligence.

The question is whether defendant was "exonerated" at the point at which his conviction was reversed and the case remanded for trial, or on the day the indictment was dismissed. The answer matters because the former date would subject defendant's claim to the one-year time-bar in *N.J.S.A.* 59:8–9 and the latter would not. The Appellate Division ruled that the earlier date was the date on which exoneration occurred and Rogers' claim accrued, and accordingly precluded the action, a notion with which we disagree. Defendant was not "exonerated" until the indictment was dismissed with prejudice in July 2008, and his claim was thus not barred by the one-year filing limitation in *N.J.S.A.* 59:8–9. Nevertheless, because the claim was filed ten days beyond the ninety-day limit set forth in *N.J.S.A.* 59:8–8, further proceedings are required to determine whether the "extraordinary circumstances" standard in *N.J.S.A.* 59:8–9 was satisfied.

## I.

The relevant facts are undisputed. In August 1998, defendant, John Rogers (Rogers), was indicted on nine counts relating to the distribution of controlled dangerous substances. Erica Smith (Smith), an attorney from the Cape May County Office of the Public Defender (OPD), was assigned to represent him. At trial, in an effort to demonstrate that the arresting officer could not distinguish Rogers from his brother, Smith crafted a plan by which Rogers would switch clothing with his brother and sit in the back of the courtroom, while his brother sat at counsel table. Smith apparently hoped that the arresting officer would identify the wrong man. The scheme was uncovered by the State and aborted before it could be carried out. However, the jury was informed of it when the State cross-examined Rogers, thereby damaging his credibility.

The jury convicted Rogers on seven counts, and on July 30, 1999, he was sentenced to a custodial term of fourteen years, with a six-year period of parole ineligibility.[1] The Appellate Division affirmed the conviction and we denied certification. *State v. Rogers*, 170 *N.J.* 209, 785 *A.*2d 437 (2001).

In 2002, Rogers filed a PCR petition. In 2005, an amended petition was filed alleging ineffective assistance by Smith during Rogers' criminal trial. The trial judge denied the petition. On October 23, 2007, the Appellate Division reversed that order and remanded the matter for a new trial on the basis that Smith's "conduct in devising the defendant-substitution plan" amounted to deficient performance, which denied Rogers a fair trial. On July 25, 2008, the trial judge dismissed the indictment against Rogers with prejudice.

On September 11, 2008, Rogers retained his current lawyer to pursue a civil claim for legal malpractice against Smith and the

---

[1] Rogers has since been released.

Cape May County OPD. The next day, Rogers' lawyer requested the PCR file, which he certified he needed to review before filing the notice of tort claim. When he did not receive the file by November 3, the lawyer sent a notice of tort claim to the Cape May County OPD. Eight months later, on July 14, 2009, the attorney filed a motion for leave to file a late notice of tort claim, which was denied. The trial judge determined that Rogers' claim accrued on October 23, 2007, when the Appellate Division reversed his conviction and remanded the case for trial. Because Rogers filed his notice of tort claim more than one year later, the court declared that it "lacked jurisdiction to provide the relief that is requested." Rogers appealed.

The Appellate Division affirmed. According to the panel, late notice must be filed within one year after accrual of a claim under *N.J.S.A.* 59:8–9. Using the standard for accrual established in *McKnight, supra,* 197 *N.J.* at 182, 962 *A.*2d 482 (noting accrual occurs when "the defendant receives relief in the form of exoneration"), the panel held that Rogers was exonerated on October 23, 2007, when the Appellate Division reversed his conviction and remanded for a new trial. Therefore, notice had to be filed within ninety days of October 23, 2007. The panel noted that Rogers' notice was filed late and that Rogers offered no fair "explanation of extraordinary circumstances" for his late filing. Moreover, the panel concluded that based on the October 23, 2007, date, Rogers' claim was filed more than one year from accrual and thus was time-barred under the Tort Claims Act. Accordingly, the panel affirmed the judgment of the trial court denying Rogers' motion for leave to file a late notice of tort claim.

We granted Rogers' petition for certification and now reverse. *Rogers v. Cape May Cnty. Office of the Pub. Defender,* 205 *N.J.* 80, 12 *A.*3d 212 (2011).

II.

Rogers argues that the dismissal of the charges on July 25, 2008, was the point of exoneration because up until then he still

faced conviction; his notice of tort claim was filed within one year of that date; the notice was only ten days late; defendants, who were already aware of the claim, suffered no prejudice therefrom; and, an extraordinary change in law justified the late notice.

Defendants counter that Rogers' claim accrued on October 23, 2007, when he was granted PCR based on ineffective assistance of counsel; that decision was a favorable disposition that was more beneficial compared to an undisturbed criminal conviction; Rogers waited over a year to file his motion and thus his claim is barred; in no event were there extraordinary circumstances warranting an extension within which to file; and, permitting an extension would prejudice the State because the conviction took place over a decade ago.

## III.

 Claims for damages against defendants—a public entity and a public employee—are subject to the provisions of the Tort Claims Act. *See N.J.S.A.* 59:1–1 to 12–3. "[T]he Act establishes the procedures by which claims may be brought," *Beauchamp v. Amedio,* 164 *N.J.* 111, 116, 751 *A.*2d 1047 (2000), including a mandatory pre-suit notification of claim. *See N.J.S.A.* 59:8–3; 59:8–8. Specifically, the procedures include filing of a timely notice:

> A claim relating to a cause of action . . . for injury or damage to person or to property shall be presented . . . *not later than the ninetieth day after accrual* of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The *claimant shall be forever barred* from recovering against a public entity or public employee *if:*
>
> a. *He failed to file his claim with the public entity within 90 days of accrual* of his claim except as otherwise provided in section 59:8–9. . . .
>
> [*N.J.S.A.* 59:8–8 (emphasis added).]

*N.J.S.A.* 59:8–9 alleviates the harshness of *N.J.S.A.* 59:8–8 by allowing a late filing of a notice of claim. It provides that:

> A *claimant* who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, *in the discretion of a judge* of the Superior Court, *be permitted to file such notice at any time within one year after the accrual* of his

claim *provided that the public entity or the public employee has not been substantially prejudiced* thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant *showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed* by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[*N.J.S.A.* 59:8-9 (emphasis added).]

To determine whether a notice of claim is timely under the Tort Claims Act, or whether the deadline for a late notice of claim has passed, the accrual date for the cause of action must be ascertained. *N.J.S.A.* 59:8-8 (noting that claimant must "file his claim with the public entity within 90 days of *accrual*" (emphasis added)); *N.J.S.A.* 59:8-9 (noting that claimant seeking late filing of tort claim notice must "file such notice at any time within one year after the *accrual*" (emphasis added)).

## IV.

A legal malpractice action is rooted in the tort of negligence and "accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages." *Grunwald v. Bronkesh*, 131 *N.J.* 483, 492, 621 *A.*2d 459 (1993) (citations omitted). Grunwald instituted a legal malpractice claim against his attorney, who had negotiated an option agreement with Resorts International to sell Resorts certain real property Grunwald owned. When Resorts signed the option agreement, instead of initialing the attached contract to signify approval of its form, it signed the actual contract. Grunwald claimed that his lawyer told him that Resorts had exercised the option to purchase when it signed the contract, and was bound; as a result, he passed up another offer. When Resorts refused to purchase the property, Grunwald sued for specific performance. In July 1984, a Chancery Division judge declared that the option had not been exercised by Resorts. Grunwald appealed and that judgment was affirmed by the Appellate Division in November 1985.

Grunwald filed a legal malpractice action in September 1990. The trial judge granted the lawyer's motion for summary judgment on the ground that Grunwald knew, or should have known, when he lost the specific performance action in July 1984, that he suffered damage as a result of his lawyer's negligence. Because he waited until the appeal was decided before he sued for malpractice, the judge held that the six-year statute of limitations had been breached. The Appellate Division reversed on the ground that, until the appellate process ran its course, Grunwald's damages were merely speculative, thus forestalling the accrual date. The lawyer challenged that decision before us. *Grunwald v. Bronkesh,* 130 *N.J.* 9, 611 *A.*2d 648 (1992).

█ Relying on the "special nature of the relationship between the attorney and client," we declared in *Grunwald* that "the discovery rule applies in legal-malpractice actions," postponing the accrual date until such time as "the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." *Grunwald, supra,* 131 *N.J.* at 494, 621 *A.*2d 459. Although we recognized that "inherent in a system permitting appeals is the possibility that damages may be extinguished or altered retroactively," *id.* at 496, 621 *A.*2d 459, we declared that Grunwald's claim accrued when the Chancery Division delivered its opinion in his presence in July 1984. At that point, he knew he had been damaged and that his lawyer was responsible. Because his lawsuit was instituted more than six years from that date, it was barred.

Recently, in *McKnight, supra,* 197 *N.J.* 180, 962 *A.*2d 482, we were called upon to apply *Grunwald* in a criminal setting. The facts of *McKnight* are as follows: In May 2000, McKnight engaged in an altercation with his girlfriend, as a result of which he was charged with a series of offenses. On the advice of his attorney, McKnight pled guilty to third-degree aggravated assault. On September 12, 2000, the Immigration and Naturalization Service informed McKnight that his guilty plea "had rendered him deportable." *McKnight v. Office of the Public Defender,* 397

*N.J.Super.* 265, 267, 936 *A.*2d 1036 (2007). McKnight's motion to withdraw his plea was denied on September 21, 2000, and he was sentenced, on that date, to a custodial term of three years. His conviction was affirmed on appeal.

McKnight then filed a PCR petition alleging ineffective assistance of counsel. The deficiency he claimed was counsel's failure "to advise him of the deportation consequences of his plea." *Id.* at 268, 936 *A.*2d 1036. The PCR judge granted McKnight relief, setting aside his guilty plea on December 3, 2003. Thereafter, the State permitted him to plead guilty to a disorderly-persons offense and pay a fine, dismissing all other charges against him.

On February 13, 2004, McKnight served a notice of tort claim informing the OPD of his intent to seek damages for its negligent legal advice. Defendants moved for summary judgment arguing that the notice was untimely because it was outside the ninety-day time frame set forth in Tort Claims Act.

The trial judge determined that McKnight's claim accrued on September 12, 2000, when he received the immigration advisory, and that his tort claim notice was thus untimely. The Appellate Division affirmed, holding that McKnight's cause of action accrued, at the latest, on September 21, 2000, the date upon which he was unsuccessful in withdrawing his guilty plea; he therefore "failed to timely serve a notice of tort claim and failed to timely file his civil complaint within the time frames imposed by the Tort Claims Act." *Id.* at 293–95, 936 *A.*2d 1036.

In a dissenting opinion, Judge Stern opined that in a criminal case the notion of accrual is complex and, in that setting, a malpractice claim does not accrue until defendant is "exonerated." According to Judge Stern, although exoneration does not require a determination of "actual innocence," the grant of PCR, which is essentially interlocutory, is insufficient. According to the dissent, exoneration might be "vacation of a guilty plea and dismissal of the charges, entry of judgment on a lesser offense after spending substantial time in custody following conviction for a greater offense," "dismissal of the charges, acquittal on retrial," "or any

disposition more beneficial to the criminal defendant than the original judgment." *Id.* at 298, 301, 936 *A.*2d 1036 (Stern, P.J.A.D., dissenting).

For the reasons given by Judge Stern in his dissenting opinion, we reversed the judgment of the Appellate Division. In so doing, we reaffirmed that a cause of action against an attorney who represented a defendant in a criminal matter does not accrue "until the defendant receives relief in the form of exoneration," and that the grant of PCR falls short if defendant is still subject to retrial and reconviction on the original charges. *McKnight, supra,* 197 *N.J.* at 182, 962 *A.*2d 482 (citation omitted).

Our ruling in *McKnight* was rooted in notions of finality, which distinguish *Grunwald* from *McKnight.* The Chancery Division decision in *Grunwald,* declaring that the option was not exercised, was final. Although subject to the vicissitudes of possible appellate review, the case was over. To the contrary, the PCR judge's determination in *McKnight* was merely an interim stop on the road to possible exoneration; defendant was sent back to face a new criminal trial, which had the potential to extinguish his damage claim. In other words, the *Grunwald* decision was final, whereas the *McKnight* decision was not.

## V.

▉ The specific question before us is whether Rogers "receive[d] relief in the form of exoneration" sufficient to accrue his legal malpractice claim on October 23, 2007, the date the Appellate Division reversed his conviction and remanded for a new trial, or on July 25, 2008, when the indictment was dismissed with prejudice (i.e., when Rogers could no longer be retried). Purporting to apply the *McKnight* standard, the panel below held that the appellate reversal and remand was sufficient exoneration for accrual of Rogers' cause of action. In particular, the panel explained that Rogers was exonerated on October 23, 2007, upon the previous panel's "determination that his criminal trial counsel's conduct was 'ill conceived and unethical,' resulting in reversal of

his conviction." The panel noted that "[a]t that point, Rogers was certain counsel's conduct was negligent and that it had caused him injury."

We disagree. In *McKnight*, we specifically declared that the grant of PCR did not constitute exoneration, insofar as McKnight faced a new trial and the possibility of the same outcome. To be sure, the reversal of a criminal conviction, in the most basic sense, is "more beneficial" to defendant than if the conviction were affirmed. However, it is not "exoneration." Indeed, that "benefit" of reversal is ephemeral and may be short-lived if defendant is retried and reconvicted. In those circumstances, defendant will not have been damaged by his first lawyer's inadequacy. It is the outcome of the new trial or plea that will be determinative on the issue of whether injury has been sustained.

That conclusion flows from the examples of exoneration posited by Judge Stern, and adopted by this Court, in *McKnight*. The first is "vacation of a guilty plea and dismissal of the charges." *McKnight, supra*, 197 *N.J.* at 182, 962 *A.*2d 482 (citation omitted). Vacation of the plea alone falls short. The second requires "entry of judgment on a lesser offense after spending substantial time in custody following conviction for a greater offense" or "conviction of a lesser included offense." *Ibid.* (citation omitted). Again, the mere grant of a new trial is insufficient. The third is "acquittal on retrial," *ibid.* (citation omitted), which suggests that a grant of a retrial without an actual acquittal will not satisfy the standard.

■ The ostinato in the quoted language from *McKnight*, to which we subscribe, is that temporary relief, in the form of reversal of a conviction and a remand for a new trial, does not constitute exoneration that triggers accrual of a malpractice claim. Although at that point defendant may finally know of his lawyer's inadequacy, he cannot be sure of his injury because a new conviction might well ensue. *McKnight, supra*, 397 *N.J.Super.* at 299, 936 *A.*2d 1036 (Stern, P.J.A.D., dissenting) ("[G]ranting of PCR, like reversal of a conviction ... merely voids a judgment of conviction, and the majority advocates the ability to commence a

malpractice action even before the defendant achieves PCR, and does so notwithstanding the fact that, even if successful in obtaining PCR, the defendant may be convicted again upon retrial ... which precludes a finding of ... injury."). Unlike *Grunwald,* the injury element of a malpractice claim has not been finally determined in a criminal case at the point at which a conviction is reversed and a matter remanded for trial.

We are not persuaded otherwise by the policy arguments advanced by defendants. Indeed, allowing the accrual of a legal malpractice action based on negligent criminal representation while the "ultimate criminal disposition is still pending," *McKnight, supra,* 397 *N.J.Super.* at 299, 936 *A.*2d 1036 (Stern, P.J.A.D., dissenting), would lead to the unavoidable filing of an avalanche of ultimately unsustainable legal malpractice claims. Moreover, any potential prejudice to the attorney, "whose performance has been placed in question," by the elongation of the accrual date was addressed in our additional requirement in *McKnight,* that "a copy of the PCR petition" be transmitted "to the attorney who is alleged to have denied his client the effective assistance of counsel" and to his employer. *See McKnight, supra,* 197 *N.J.* at 183, 962 *A.*2d 482. Finally, we think it unduly burdensome to require a defendant, who is seeking vindication in his ongoing criminal matter, to simultaneously secure civil counsel and pursue a legal malpractice claim.

In sum, in this case the Appellate Division erred in holding that Rogers was exonerated when he was granted PCR. It was not until the indictment was dismissed with prejudice that he was, in fact, exonerated. That took place on July 25, 2008. The notice of tort claim was filed on November 3, 2008, within the one-year window provided in *N.J.S.A.* 59:8-9, and thus we reverse the Appellate Division's conclusion to the contrary.

## VI.

That is not the end of the story. Clearly, Rogers was not barred from seeking leave to file a late notice of claim because the

one-year limit in *N.J.S.A.* 59:8–9 had not yet expired. *See N.J.S.A.* 59:8–9 ("[C]laimant . . . , may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time *within one year* after the accrual . . . ." (emphasis added)); *Lowe v. Zarghami*, 158 *N.J.* 606, 613, 731 *A.*2d 14 (1999) (noting that *N.J.S.A.* 59:8–9 "permits a court to allow a plaintiff to file a late notice of a claim under 'extraordinary circumstances,' if the *motion* is made *within one year of the accrual* of the claim" (emphasis added)); *see also Pilonero v. Twp. of Old Bridge*, 236 *N.J.Super.* 529, 532, 566 *A.*2d 546 (App.Div.1989) ("After the one-year limitation has passed, the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail." (citations omitted) (internal quotation marks omitted)).

■ Nevertheless, Rogers was beyond the ninety days provided in that Act. His notice was ten days late. In that respect, the filing of "a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of [*N.J.S.A.* 59:8–9]." Margolis & Novack, *Claims Against Public Entities*, comment on *N.J.S.A.* 59:8–9 (2011) (citing *Priore v. State*, 190 *N.J.Super.* 127, 130, 462 *A.*2d 191 (App.Div.1983), *overruled on other grounds, Moon v. Warren Haven Nursing Home*, 182 *N.J.* 507, 867 *A.*2d 1174 (2005)). Though Rogers' notice, filed on November 3, 2008, was a nullity, he did seek leave to file a late notice of tort claim on July 14, 2009, within one year of the accrual date.

■ In order for that motion to succeed, Rogers had to demonstrate that defendants would not be "substantially prejudiced" and that "extraordinary circumstances" caused his failure to file a timely notice:

> Permission to file a late notice of claim requires a showing (1) that the public entity or public employee will not be "substantially prejudiced" by the granting of such permission; and (2) that there are sufficient reasons, based upon the personal knowledge of the affiant, constituting "extraordinary circumstances" for the failure to file a notice of claim within the ninety-day window prescribed by *N.J.S.A.* 59:8–8.

[*Allen v. Krause*, 306 *N.J.Super.* 448, 455, 703 *A.*2d 993 (App.Div.1997); *see* *N.J.S.A.* 59:8–9.]

█ The phrase "extraordinary circumstances" was added to the Tort Claims Act in 1994. *L.* 1994 *c.* 49 § 5. Its purpose was to raise the bar for the filing of a late notice from "a fairly permissive standard," which required the movant "to demonstrate only 'sufficient reasons' for the delay," to "a more demanding standard," now requiring that the " 'sufficient reasons' for late filing must constitute 'extraordinary circumstances.' " *Lowe, supra,* 158 *N.J.* at 625–26, 731 *A.*2d 14. *Compare L.* 1972 *c.* 45 § 59:8–9 ("showing sufficient reasons for his failure to file notice"), *with L.* 1994 *c.* 49 § 5 ("showing sufficient reasons constituting extraordinary circumstances for his failure to file notice").

█ The statute does not define "what circumstances are to be considered 'extraordinary,' " *Lowe, supra,* 158 *N.J.* at 626, 731 *A.*2d 14 (citations omitted), and the meaning to be ascribed to that term has been developed on a case-by-case basis. Thus, a plaintiff's ignorance of the ninety-day deadline or counsel's inattention or administrative shortcomings do not constitute extraordinary circumstances. *See, e.g., Zois v. N.J. Sports & Exposition Auth.,* 286 *N.J.Super.* 670, 674, 670 *A.*2d 92 (App.Div.1996) (noting "misfiling by the secretary and the attorney's forgetfulness" do not constitute extraordinary circumstances).

To the contrary, extraordinary circumstances have been found where a plaintiff had no reason to know a public employee had injured him. *See Lowe, supra,* 158 *N.J.* at 629–30, 731 *A.*2d 14; *Eagan v. Boyarsky,* 158 *N.J.* 632, 640, 731 *A.*2d 28 (1999) (noting extraordinary circumstances exist where plaintiff had no reason to know defendant was public employee). Extraordinary circumstances have also been found where an attorney was understandably confused over the law regarding accrual as it pertained to the filing of notice. *See Beauchamp, supra,* 164 *N.J.* at 123, 751 *A.*2d 1047 ("Because there was general confusion among lawyers and judges relative to th[e] concepts [of accrual and extraordinary

circumstances] ... [plaintiff] established extraordinary circumstances warranting the filing of late notice of claim.").

In this case, the focus of the trial judge's opinion was the one-year bar in *N.J.S.A.* 59:8–9, which he believed precluded him from considering defendant's motion to file a late notice. Although the judge mentioned extraordinary circumstances in passing, relative to Rogers' claims regarding a change in law from *Grunwald* to *McKnight*, he dismissed that notion because he believed that Rogers was late under *Grunwald* as well.

In our view, there was confusion over the concept of accrual of a malpractice claim in the criminal setting under *Grunwald*. In part, that stemmed from the dearth of reported criminal malpractice decisions and in part because *Grunwald's* reliance on finality was expressively muted. As a result, practitioners and judges read *Grunwald* more expansively than was warranted. As we have said in Point IV, *supra*, it was the finality of the Chancery Division judgment in *Grunwald* that made that the date of accrual. That kind of finality is not present where an appellate court reverses a conviction and remands for an entirely new proceeding. However, that nuance seems to have escaped at least two appellate panels. Thus, like them, Rogers' civil lawyer may well have believed Rogers' claim was already barred when the lawyer was retained.

Moreover, we do not know why Rogers' lawyer waited until November 3, 2008, to file the notice; whether he was confused by the appellate decisions in *McKnight*; or why he delayed until July 14, 2009, to seek leave to file a late notice of claim. We do know that he believed that defendants had actual notice of Rogers' claim within the relevant time frames and that no prejudice could result from his technically-late filing.

We think those are issues which should be addressed in the first instance by the trial judge who, in fairness, gave only brief attention to extraordinary circumstance because he believed he was precluded from considering Rogers' motion as a result of the one-year bar. All of those issues should be fleshed out before the

trial judge who can then make an informed decision on extraordinary circumstances.

## VII.

The judgment of the Appellate Divisions is reversed. The matter is remanded to the trial judge for the further proceedings to which we have adverted.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, HOENS, PATTERSON, and Judge WEFING (temporarily assigned)—7.

*Opposed*—None.