**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5953-17T1

NANCY DANCH,

      Plaintiff-Respondent,

v.

BOROUGH OF FIELDSBORO,

      Defendant-Appellant,

and

WHITE HILL MANSION
and THE FRIENDS OF
WHITE HILL MANSION,

      Defendants.

_____

           Submitted September 9, 2019 – Decided September 17, 2019

           Before Judges Fasciale, Moynihan and Mitterhoff.

           On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0855-18.

           Parker McCay, PA, attorneys for appellant (John C. Gillespie and Sarah E. Tornetta, on the brief).

Levy Baldante & Finney, PC, attorneys for respondent
(Kyle J. Keller, on the brief).

PER CURIAM

Plaintiff Nancy Danch injured herself on property owned by defendant Borough of Fieldsboro. On July 26, 2018, Judge John E. Harrington entered an order, which granted plaintiff's motion to file a late notice under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Defendant appeals from that order arguing that the judge abused his discretion. On appeal, defendant maintains that plaintiff did not substantially comply with the notice requirements under the TCA and failed to demonstrate extraordinary circumstances. We disagree and affirm substantially for the reasons given by the judge in his comprehensive written opinion.

On October 21, 2017, plaintiff tripped near a platform located in defendant's historic property known as the White Hill Mansion (the property). Plaintiff had been volunteering that day and interacting with co-defendant, The Friends of White Hill Mansion (The Friends).[1] The Friends worked to restore and preserve the property.

---

[1] The court previously dismissed plaintiff's complaint against The Friends for failure to prosecute.

A-5953-17T1

## I.

We begin with defendant's substantial compliance contention. Plaintiff had ninety days, or by December 21, 2017, to file her claim under the TCA. See N.J.S.A. 59:8-8(a) (imposing the deadline for filing the notice). The judge correctly found that plaintiff had substantially complied with N.J.S.A. 59:8-4, entitled "Contents of claim," which provides that a claim under the TCA shall include:

> a. The name and post office address of the claimant;
>
> b. The post-office address to which the person presenting the claim desires notices to be sent;
>
> c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
>
> f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

A-5953-17T1

In his written opinion dated July 24, 2018, the judge made specific findings to support his conclusion that plaintiff substantially complied with the notice requirements under the TCA. In part, the judge stated:

> [W]ithin nine (9) days of the subject incident, [President] Loretta Kelly of [The Friends] informed Patricia Hansell, Clerk of [defendant] via email of an incident that occurred at [the property] . . . . Ms. Kelly wrote [to Ms. Hansell] "the wom[an] . . . who fell at [the property] [is] Nancy Danch[,] [and Ms. Kelly provided plaintiff's address]. It doesn't look like she's pursuing anything, not yet." In addition to this, the email is titled "Pictures," which can reasonably be inferred that Ms. Kelly previously emailed Ms. Hansell pictures of either the area where [plaintiff] fell and/or [plaintiff's] injuries.
>
> Furthermore, by October 22, 2017, the day after the subject incident, [Ms.] Kelly knew that [p]laintiff was hurt and hoped that she was "not too badly hurt." By October 28, 2017, seven (7) days after the subject incident, [Ms.] Kelly knew that [p]laintiff underwent jaw surgery for her facial fractures. Presu[mably], this information relating to [p]laintiff's injuries was ultimately relayed to Ms. Hansell before [the] email of October 30, 2017 between Ms. Kelly and Ms. Hansell. . . . Finally, and most persuasive[ly] . . . as of October 30, 2017, just nine (9) days after the subject incident, [defendant] was undoubtedly notified of the name and address of [p]laintiff, the date of the incident, the location of the incident, the entity causing her injury, and possibly, [was] provided with photographs evidencing the incident and/or injuries sustained by [p]laintiff.

A-5953-17T1

Thus, there is substantial credible evidence that well within ninety days of when the accident occurred, defendant had actual knowledge of the incident, including plaintiff's name and address, the date of the trip and fall, the location of the fall, photographs of the area of the fall and/or injuries, and a general description of the injury.

As to the amount of the claim, on December 30, 2017, plaintiff wrote Ms. Kelly (who had been in communication with Ms. Hansell about the details of the incident) requesting reimbursement for her medical expenses not paid by plaintiff's insurance. But by that time (and within ninety days of the accident), the full extent of the damages was unknown to plaintiff. That amount was yet to be calculated.

The notice requirements of the TCA are "not intended as 'a trap for the unwary.'" Lebron v. Sanchez, 407 N.J. Super. 204, 215 (App. Div. 2009) (quoting Lowe v. Zarghami, 158 N.J. 606, 629 (1999)). The Supreme Court has recognized that the TCA notice requirements are "more properly denominated as a notice of injury or loss." Beauchamp v. Amedio, 164 N.J. 111, 121 (2000). Therefore, "substantial rather than strict compliance with the notice requirements of the [TCA] may satisfactorily meet the statute's mandates." Lebron, 407 N.J. Super. at 215. The doctrine of substantial compliance is an

5

alternative to the extraordinary circumstances requirement and can serve to relieve a claimant, like plaintiff, of the TCA's notice requirements. See <u>D.D. v. Univ. of Med. and Dentistry of N.J.</u>, 213 N.J. 130, 149, 159 (2013). It is an equitable doctrine that is utilized

> "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Thus, the doctrine operates "to prevent barring legitimate claims due to technical defects." In general, it rests on a demonstration that a party took "a series of steps . . . to comply with the statute involved," and those steps achieved the statute's purpose, as for example, providing notice. Even so, the doctrine can only apply if there is no prejudice to the other party and if there is "a reasonable explanation why there was not strict compliance with the statute."
>
> [<u>Cty. of Hudson v. State, Dep't of Corr.</u>, 208 N.J. 1, 21-22 (2011) (alteration in original) (citations omitted).]

On this record, and recognizing that there exists no prejudice whatsoever to defendant, we conclude that the judge did not abuse his discretion by invoking this equitable doctrine.[2]

---

[2] Although not determinative, plaintiff's counsel points out in his merits brief that defendant never provided plaintiff with a claims form, and along those lines, implies that defendant did not produce such a form because no such form exists on defendant's website or elsewhere.

II.

Even if plaintiff failed to comply substantially with the notice requirements of the TCA, which is not the case, plaintiff demonstrated extraordinary circumstances warranting the late filing of the claims notice under N.J.S.A. 59:8-9.

The law governing the filing of a late notice of claim under the TCA is settled. N.J.S.A. 59:8-9, entitled "Notice of late claim," controls such filings and provides:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

This statute "commits the authority to grant a plaintiff's motion for leave to file late notice to the sound discretion of the trial court, and [its decision] will be

7

sustained on appeal in the absence of a showing of an abuse thereof." D.D., 213 N.J. at 147 (internal quotation marks and citation omitted).

"Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary." Id. at 149. "[I]n engaging in the analysis of extraordinary circumstances, the court's focus must be directed to the evidence that relates to plaintiff's circumstances as they were during the ninety-day time period[.]" Id. at 151. Although the statute does not define the term extraordinary circumstances, "the meaning to be ascribed to that term has been developed on a case-by-case basis." Rogers v. Cape May Cty. Office of Pub. Def., 208 N.J. 414, 428 (2011).

In enacting N.J.S.A. 59:8-9, "the Legislature recognized that discretionary judicial relief from the ninety-day [TCA] requirement may be necessary to ameliorate the consequence of a late filing in appropriate cases." McDade v. Siazon, 208 N.J. 463, 476 (2011). "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" Moraes v. Wesler, 439 N.J. Super. 375, 378 (App.

Div. 2015) (quoting <u>Flagg v. Essex Cty. Prosecutor</u>, 171 N.J. 561, 571 (2002)), or when "the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." <u>Ibid.</u> (quoting <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)).

When a claimant has filed a motion for leave to file a late notice, as is pertinent to our case, there must "be a showing of 'sufficient reasons constituting extraordinary circumstances' for the claimant's failure to timely file, and second, that the public entity not be 'substantially prejudiced' thereby." <u>McDade</u>, 208 N.J. at 477 (quoting N.J.S.A. 59:8-9). Here, there is no credible showing of substantial prejudice. We focus, instead, on the sufficiency of the reasons for the purported late filing. Of course, we do so fully understanding that there was no need to file the motion because plaintiff substantially complied with the notice provision of the TCA.

During the ninety days, and thereafter, plaintiff believed her verbal and written communications with Ms. Kelly constituted filing her TCA notice. From the day after the accident to the end of the ninety days, Ms. Kelly interacted with plaintiff not only as the president of The Friends, but also as someone who operated out of defendant's municipal building. Indeed, at the relevant

timeframe, the CEO of The Friends was defendant's mayor. And as Ms. Hansell admits, defendant had actual knowledge of the details of the trip and fall on the property.

After the ninety days, Ms. Kelly continued responding as if an authorized representative of defendant. On January 1, 2018, Ms. Kelly responded to plaintiff's December 30, 2017 email inquiry asking if defendant would reimburse her for the outstanding medical expenses. Ms. Kelly's response – "I'll have to check. How much are your expenses?" – reinforced the fact that defendant had been informed about plaintiff's claim. On January 6, 2018, plaintiff replied to Ms. Kelly:

> I am waiting for my oral surgeon's bill as this surgery was covered under my medical [insurance] and they sent it to my insurance company with [an] incorrect diagnos[is] code. The other expenses (minus surgery) to date amount to approximately $230. I will let you know as soon as I receive the surgery bill.

After a follow-up email from plaintiff on February 5, 2018, Ms. Kelly, for the first time, informed plaintiff to call defendant's clerk. Ms. Kelly, who had communicated with the clerk about the claim, explained "the last time I talked to [the clerk] she said you would have to file a lawsuit [and] since you waited so long to see a doctor[,] they probably won't cover any medical expenses." That same day, plaintiff replied:

> The fall happened on 10/21 and I went to the medical express the next morning, 10/22, and was sent to Capital Health ER for a CT scan and x-rays of my injuries. I then followed up with my primary care, orthopedic, and oral surgeons immediately that next week and had [the] necessary tests completed. I had my jaw surgery Thursday, 10/26, four days after [the] fall.

In her affidavit, plaintiff certified that she called Ms. Hansell immediately and that, at that time, Ms. Hansell "never advised me that [defendant] did not have notice of my claim." On March 26, 2018, for the first time, defendant notified plaintiff that her claim was untimely under the TCA. On that day, plaintiff contacted counsel, who then made the motion four weeks later leading to the order under review.

We are convinced, as was Judge Harrington, that – even if there was no substantial compliance – plaintiff demonstrated sufficient reasons for the late filing of her notice under the TCA. In the judge's written opinion, the judge made multiple additional findings along those lines, which the record credibly supports, stating:

> [T]he May 23, 2018 Certification of Ms. Hansell provides evidence that both Ms. Hansell and [defendant] [were] on notice of [p]laintiff's claim prior to the expiration of the ninety (90) days required by [the TCA]. . . . In addition to this, [d]efendant attached [to its papers] a "New Jersey Business Gateway Search" for [The Friends] [which] reveals that Ms. Kelly . . . utilizes [defendant's] building . . . as her own

"agent/service" address. Hence, despite arguing that Ms. Kelly is not an "employee, agent . . . or otherwise authorized to act on behalf of [defendant]," it is clear she is authorized to use [defendant's] Municipal Building as her own address for purposes of service and for use by [The Friends].

. . . .

Plaintiff honestly believed that she was, all along, filing a claim through her various communications with Ms. Kelly of [The Friends and defendant]. This is supported by the fact that [defendant's] clerk . . . admits to having actual knowledge of the incident involving the [p]laintiff, as well as [p]laintiff's personal information within nine (9) days of the incident, and the fact [that] Ms. Kelly's office (and [The Friends]) utilizes the mailing address of [defendant's] Municipal Building[.]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION