**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2018-21

IN THE MATTER OF
MARIE COGNAT,
by her power of attorney,
RICHARD V. COGNAT.

_____

Argued February 13, 2023 – Decided November 21, 2023

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0062-22.

Richard J. Mirra argued the cause for appellants Middlesex County Improvement Authority and Roosevelt Care Center at Old Bridge (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Richard J. Mirra, of counsel and on the briefs).

Alexandrea M. Jacinto argued the cause for respondent Marie Cognat, by her power of attorney, Richard V. Cognat (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Thomas J. Manzo, of counsel and on the brief; Craig J. Hubert, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Appellants Middlesex County Improvement Authority (County) and Roosevelt Care Center at Old Bridge (RCC) appeal from the February 18, 2022 order of the Law Division granting leave to respondent Marie Cognat, by her son and power of attorney, Richard V. Cognat, to file a late notice of claim pursuant to N.J.S.A. 59:8-9, a provision of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-1. We reverse.

I.

The facts are not in dispute. Marie,[1] then ninety-two and suffering from a number of disabling mental and physical conditions, was a patient at RCC, a medical facility operated by the County. Marie was unable to ambulate on her own and was dependent on RCC staff for all movements. On January 8, 2021, Marie fell, suffering a fractured leg. She was discovered by staff on the floor in her room. Because of her confusion and disorientation, Marie was unable to explain the circumstances of her fall. She was transferred to a hospital where she underwent surgery to repair her injuries.

On January 8, 2021, the day of the fall, RCC staff informed Richard that his mother had fallen and was transported to the hospital.

---

[1] Because Marie and her son share a surname, we refer to them by their first names to avoid confusion. No disrespect is intended.

A-2018-21

On January 14, 2021, Marie was discharged from the hospital. She was still unable to explain the circumstances of her fall.

On January 21, 2021, thirteen days after the fall, Richard contacted the Szaferman law firm. Richard informed Thomas J. Manzo, a partner at the firm, that Marie had fallen and fractured her leg while a resident of RCC, but could not explain the circumstances of her fall. He expressed his desire to obtain power of attorney over his mother's affairs and expressed an interest in determining the cause of his mother's fall and whether RCC was liable for her injuries.

Richard informed Manzo that he had a brother from whom he was estranged and who was likely to be uncooperative with Richard's efforts to obtain power of attorney for their mother. Manzo arranged for an attorney to meet with Marie and Richard to execute documents creating a power of attorney for Marie. According to Manzo, COVID-19-related concerns and restrictions, the need to coordinate separately with Richard and his brother, and the requirement that witnesses be present when the documents were signed complicated scheduling.

On April 27, 2021, Marie executed the documents necessary to vest power of attorney on her behalf in Richard and his brother as co-agents. That same

day, Richard retained the Szaferman firm to investigate the circumstances surrounding Marie's fall. Manzo acknowledged that the April 27, 2021 retention date fell outside the ninety-day window for filing a notice of claim. See N.J.S.A. 59:8-8. The Szaferman firm, however, did not file a late notice of claim and motion for leave to file a late notice of claim. See N.J.S.A. 59:8-9. Manzo was of the opinion that without Marie's medical records, it was not possible to determine the cause of her fall and whether she had a viable claim against RCC.

Unbeknownst to Manzo, on April 8, 2021, prior to execution of the power of attorney documents, Richard consulted with Mark Shane, an attorney at Shane and White, to obtain advice relating to Marie's fall. Richard did not inform Shane that he had previously consulted with Manzo or that the Szaferman firm was endeavoring to obtain a power of attorney for Richard to act on Marie's behalf. At his meeting with Shane, Richard had no records relating to Marie's fall and, according to Shane, "could not provide the exact date of his mother's fall, but stated it may have been around December 21, 2020."

It was Shane's understanding based on the accident date provided by Richard that the ninety-day period in which to file a notice of claim had passed. Richard did not retain Shane. "[N]onetheless," Shane certified, "I proceeded to

place potentially necessary parties on notice of the incident and the potential for a claim" in order to protect Marie's interests.

On April 21, 2021, Shane filed a notice of claim with the County and RCC on behalf of Marie. The notice identified the date of Marie's accident as December 21, 2020.[2] Shane described the accident as Marie falling as the result of either the side rails on her bed being left down or because she was dropped when getting helped out of bed. Not knowing how the fall happened, Shane surmised that Marie fell as the result of one of these possible scenarios. The notice of claim is signed by Shane as attorney for Marie. Despite knowing that the ninety-day period had expired, Shane did not file a motion for leave to file a late notice of claim.

According to Manzo, "[a]fter retention," on April 27, 2021, his "firm sought medical records pertaining to [Marie's] fall and injuries." He did not, however, identify the date on which the records requests were made.

On November 10, 2021, almost seven months after it was retained by Richard, the Szaferman firm received Marie's medical records from RCC. Because the trial court record does not contain the date on which the medical

---

[2] Marie does not claim that she fell in a separate incident on December 21, 2020 and acknowledges that Shane listed the incorrect date on the notice of claim.

records were requested, it is not possible to determine to whom the seven-month period between the date the firm was retained and the date the records were received is attributable. According to Manzo, "[i]n these records, it is noted that [Marie] was found on the ground next to her bed. There appears to be no further information regarding the nature of her fall." Thus, the records request produced no more information than that which Richard told the Szaferman firm on January 21, 2021.

Nearly two months later, and almost a year after the fall, on January 5, 2022, the Szaferman firm, still unaware that Shane had filed a late notice of claim, moved pursuant to N.J.S.A. 59:8-9 for leave to file a late notice of claim dated January 5, 2022, a copy of which was attached to the motion. The late notice of claim that the Szaferman firm sought leave to file contains no information about the cause of the fall other than what Richard told the firm on January 21, 2021. The cause of the accident is described as "[t]he entity and its employees failed to provide proper care, safeguards, supervision and monitoring such that the fall occurred."

On January 11, 2022, counsel for the County and RCC, informed the Szaferman firm that Shane had already filed a late notice of claim on April 21, 2021, and that the County and RCC had denied the claim on June 22, 2021.

On February 18, 2022, the trial court issued an oral opinion granting the motion. Although the court did not make a finding of fact with respect to when Marie's cause of action accrued, it is evident that the court's analysis is based on an accrual date of January 8, 2021. The court first examined the January 5, 2022 notice of claim prepared by the Szaferman firm. The court noted that the motion was filed three days prior to the one-year anniversary of the fall and that the Szaferman firm cited the need to obtain medical records as the reason for not filing a timely notice and for the long delay in seeking leave to file a late notice. The court found, however, that all of the information in the notice was available to Richard at the time of Marie's fall and that completion of the notice did not "require[] a year's worth of study or investigation."

In addition, the court found that the notice's description of the basis for the claim was "boilerplate that would be found in any . . . complaint for negligence . . . that doesn't require review of hospital records." In addition, the court noted that although the notice lists a specific description of the type of fracture Marie suffered, "a precise diagnosis is not required for the tort claim notice." The court concluded that "[t]here's nothing in this notice that would justify the delay in waiting until . . . January of 2022."

A-2018-21

The court then turned to the late notice of claim filed by Shane. Although that notice was not the subject of Szaferman's motion, the court examined whether it "would be substantially compliant with the statute." The court found that the Shane notice was filed beyond the ninety-day statutory period. However, the court found that the notice set forth sufficient information, despite the incorrect date of the fall, to put the defendants on notice of Marie's claim. The court continued:

> the only thing that's really wrong in here is the date. . . . Now, here, the plaintiff's son, obviously, was looking around for an attorney that could help, and Shane & White was the first firm that took it upon themselves to actually send something out. And it was not very long. It was within a couple of weeks of him having visited them.
>
>      . . . .
>
> [T]he extraordinary circumstances being, you have a plaintiff who is unable to do any of this for themselves because of their condition. . . . Mrs. Cognat was 93 years old and was confused as to her situation with a failing memory.
>
> So, the delay in providing that notice . . . meets the standard for a late notice of claim. The fact that they gave the wrong date . . . I would regard the notice as being substantially compliant and there's no prejudice because [RCC] knows when she actually fell. So, I'm going to grant the motion.

8

Although it appears the trial court granted Marie leave to file the April 21, 2022 late notice of claim, the court's February 18, 2022 order provides that the January 5, 2022 late notice of claim shall be deemed timely filed. A conflicting notation on the bottom of the order indicates that the court is permitting the April 21, 2021 notice of claim to be filed "two weeks late . . . ." The precise intention of the trial court is unclear.[3]

This appeal follows. The County and RCC argue that the trial court misapplied the law and abused its discretion when it permitted the late filing of the April 21, 2021 notice of claim, which was filed nine months before Marie moved for leave to file a late notice of claim, and which was not the subject of Marie's motion.

## II.

The TCA modifies the doctrine of sovereign immunity and establishes the parameters within which an injured party may recover for the tortious acts of public entities and employees. Feinberg v. Dep't of Envt'l Prot., 137 N.J. 126, 133 (1994). The statute's "guiding principle" is "that immunity from tort

---

[3] In both its oral opinion and order the trial court relied on an unpublished opinion of this court. According to Rule 1:36-3, "[n]o unpublished opinion shall constitute precedent" and "no unpublished opinion shall be cited by any court[,]" except in circumstances not applicable here. We do not consider the unpublished opinion cited by the trial court in our analysis.

liability is the general rule and liability is the exception." <u>D.D. v. Univ. of Med. & Dentistry of N.J.</u>, 213 N.J. 130, 134 (2013) (quoting <u>Coyne v. Dep't of Transp.</u>, 182 N.J. 481, 488 (2005) (internal quotations omitted)). The Act, therefore, "imposes strict requirements upon litigants seeking to file claims against public entities." <u>McDade v. Siazon</u>, 208 N.J. 463, 468 (2011).

Among those requirements is that the claimant, prior to initiating suit, file a notice of claim describing "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," along with other information. N.J.S.A. 59:8-4(a) to (f). The notice of claim

> shall be presented . . . not later than the 90th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9 . . . .
>
> [N.J.S.A. 59:8-8.]

N.J.S.A. 59:8-9 provides that

> [a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 . . . , may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for

permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." Ibid. (quoting Beauchamp, 164 N.J. at 118). "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).

"Accrual shall mean the date on which the claim accrued . . . ." N.J.S.A. 59:8-1. A claim accrues under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted

11

by a private citizen." Beauchamp, 164 N.J. at 123. We review de novo the trial court's determination of an accrual date. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The accrual date of Marie's claim was January 8, 2021, the date she fell. Ninety days from January 8, 2021 was April 8, 2021. There is no dispute that no notice of claim was filed on behalf of Marie during the ninety-day period.

In addition, there is no dispute that Richard met with two law firms during that period, seeking advice with respect to whether Marie had a viable claim relating to her fall. Richard met with the Szaferman firm on January 21, 2021, just thirteen days after the fall, and retained the firm to prepare the documents necessary for Marie to vest in him power of attorney over her affairs. As the trial court found, at that time, Richard had all of the information necessary for the Szaferman firm to file a notice of a claim on behalf of Marie.

While it is true that the firm had not been retained by Marie at that time, an attorney-client relationship is not necessary to file a protective notice of claim on behalf of a potential client. A notice of claim shall be "signed by the claimant or by some person on his behalf." N.J.S.A. 59:8-5. This includes counsel acting in the claimant's interest, even if not retained or authorized to do so. S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 121-22 (1977) (concluding

attorney can move for leave to file late notice of claim on behalf of claimant without having been retained to do so because he was not "an officious intermeddler[] in presuming to make the . . . motion on [the claimant's] behalf.")

This is precisely what Shane did after Richard met with his firm on April 8, 2021, the final day of the statutory period for filing a timely notice of claim. Although Shane did not have Marie's medical records and had not been retained as her counsel, he filed a late notice of claim to protect her interests. The notice set forth plausible alternative scenarios to explain the fall of an immobile elderly patient who needed staff assistance for all of her movements and was found on the floor of her room. Unfortunately, despite his belief that the ninety-day period had expired, Shane waited an additional thirteen days to file the late notice of claim on April 21, 2021, without also moving for leave to file a late notice of claim. Because Shane filed the April 21, 2021 notice of claim outside of the statutory period for doing so without also filing a motion for leave to file a late notice of claim, it was a legal nullity. Rogers v. Cape May Cnty. Off. of the Pub. Def., 208 N.J. 414, 427 (2011).[4]

---

[4] Richard told Shane that Marie fell on December 21, 2020, which was more than ninety days before the April 8, 2021 meeting. In fact, Marie fell on January 8, 2021, exactly ninety days before the April 8, 2021 meeting. Had Shane filed the notice of claim on the day he met with Richard it would have been timely.

A-2018-21

A motion for leave to file a late notice of claim was not filed until January 5, 2022, a few days short of a year after the fall. The April 21, 2021 late notice of claim was not the subject of that motion. Instead, the Szaferman firm sought leave to file the January 5, 2022 late notice of claim.

We turn then to whether the trial court's grant of leave to file a late notice of claim was warranted. The relevant period for our inquiry is from January 8, 2021, when the claim accrued, to January 5, 2022, when Marie moved for leave to file a late notice of claim. Only a claimant's demonstration of extraordinary circumstances justifies such leave. N.J.S.A. 59:8-9. We review the trial court's application of the extraordinary circumstances exception for an abuse of discretion. McDade, 208 N.J. at 476-77. "Although deference will ordinarily be given" to the trial court's fact findings, "the court's conclusions will be overturned if they were reached under a misconception of the law." D.D., 213 N.J. at 147.

Prior to the enactment of N.J.S.A. 59:8-9, to be granted leave to file a late notice of claim, a claimant needed only show "sufficient reasons" prevented the filing of a timely notice of claim. Lowe v. Zarghami, 158 N.J. 606, 625 (1999). The statute was amended in 1994 to include the extraordinary circumstances standard, which is "more demanding[,]" id. at 625-26, and "raise[d] the bar for

the filing of a late notice" of claim, <u>Rogers</u>, 208 N.J. at 428. The party seeking leave to file a late notice of claim must show extraordinary circumstances. <u>Ventola v. N.J. Veterans' Mem'l Home</u>, 164 N.J. 74, 80 (2000).

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of 'extraordinary' on the facts presented." <u>Lowe</u>, 158 N.J. at 626 (citations and internal quotations omitted). As the Supreme Court explained,

> [t]he Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself. Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.

> [<u>D.D.</u>, 213 N.J. at 148-49.]

There is support in the record for finding that Marie's medical conditions, standing alone, constituted extraordinary circumstances that would justify the

late filing of a notice of claim. To establish extraordinary circumstances, a claimant must demonstrate a medical condition during the period in which the notice was to be filed that, when viewed objectively, was "severe, debilitating, or uncommon" and prevented "attend[ing] to the filing of a claim." Id. at 150. It is clear that Marie was unable to attend to her affairs, file a notice of claim on her own, or even describe the circumstances of her fall.

However, the record also demonstrates that Richard, despite not yet having been granted power of attorney over Marie's affairs, was aware of her injury on the day that it happened and was almost immediately thereafter acting on her behalf to protect her right to assert claims relating to her fall. He contacted the Szaferman firm thirteen days after Marie fell and gave the firm sufficient information with which to file a notice of claim on Marie's behalf. Richard also contacted Shane within the ninety-day notice period and gave him the same information. Prior to the execution of the power of attorney and without being retained, Shane a short time later filed a late notice of claim that complied with the statute to protect Marie's interests.

Surely, by April 27, 2021, when Marie executed the power of attorney documents, any justification for further delay in filing a late notice of claim and motion for leave to file a late notice of claim ceased to exist. Yet, the Szaferman

firm did not file those documents and instead endeavored over the next seven months to obtain Marie's medical records. Once the firm obtained those records, it waited another seven weeks to file a late notice of claim and motion for leave to file a late notice of claim. As the trial court found, the late notice of claim set forth no information concerning the cause of Marie's fall beyond that given to the Szaferman firm by Richard on January 21, 2021.

The record contains no details of the efforts made to obtain Marie's medical records. The nearly seven-month delay in production of the records is unexplained. Nor did the moving papers address the seven-week period between the day that the medical records were produced and the filing of the motion for leave to file a late notice of claim. As we understand the trial court's decision, it found an absence of extraordinary circumstances warranting the late filing of the January 5, 2022 notice of claim (despite the conflicting provisions in the trial court's February 18, 2022 order).

As we see it, the trial court concluded that the April 21, 2021 late notice of claim substantially complied with the notice provisions of the TCA and that extraordinary circumstances warranted its late filing. If Shane had filed a motion for leave to file a late notice of claim along with the April 21, 2021 notice, we very well might agree with the trial court's conclusion. He did not

file such a motion, however. Our review of the record reveals no motion seeking leave to file the April 21, 2021 notice of claim.

A motion for leave to file a late notice of claim was not filed until January 5, 2022. That motion did not seek leave to file the April 21, 2021 late notice of claim and, as far as we can discern from the record, contained no explanation for why a motion did not accompany the April 21, 2021 notice or justifying why the motion filed nine-months later about a different notice of claim should be considered to address the April 21, 2021 notice. Nor do we see in the record evidence of extraordinary circumstances excusing either of those circumstances.

We recognize that by virtue of the April 21, 2021 notice of claim the County and RCC had notice of Marie's potential claim, albeit with an incorrect date of the incident.[5] The April 21, 2021 notice, however, was untimely, even if only by thirteen days, and unaccompanied by a motion for leave to file a late notice of claim. On June 22, 2021, the County and RCC issued a letter rejecting the notice of claim as untimely. They apparently considered the matter closed.

---

[5] We agree with the trial court that the incorrect date was not material to the validity of the April 21, 2021 late notice of claim, given that Marie was in RCC's care, and the facility surely would have been able to determine the precise date on which a fall caused her to be transported to a hospital for surgery.

It was not until January 5, 2022, almost seven months later, and a year after the fall, that Richard filed a second late notice of claim on behalf of Marie.

The Legislature established a detailed statutory scheme effectuating a waiver of immunity for tort claims in limited circumstances. It is necessary for a claimant to follow the statutory steps carefully to file a timely claim or demonstrate extraordinary circumstances warranting the filing of a late notice of claim. We agree with the trial court that Marie did not establish extraordinary circumstances justifying the late filing of the January 5, 2022 notice of claim. We conclude, however, that the trial court abused its discretion when it concluded that Marie demonstrated extraordinary circumstances permitting the filing of the April 21, 2021 late notice of claim through a motion filed nearly nine months later with no justification for the delay in filing the motion.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION